UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT KEITH BELL,<br><br>    Plaintiff,<br><br>    v.<br><br>SGT. WILLIAMS, *et al*.,<br><br>    Defendants. | Case No. 18-cv-01245-SI<br><br>**ORDER GRANTING DEFENDANTS' PARTIAL MOTION TO DISMISS AND GRANTING LEAVE TO AMEND**<br><br>Re: Dkt. No. 60 |

On November 13, 2020, the Court held a hearing on defendants' partial motion to dismiss the corrected fourth amended complaint ("FAC"). Defendants seek to dismiss the *Monell* allegations contained in the third cause of action, as well as the sixth cause of action for First Amendment retaliation. For the reasons set forth below, the Court GRANTS the motion and GRANTS plaintiff leave to file an amended complaint. If plaintiff wishes to amend the complaint, plaintiff must do so no later than **December 4, 2020**. The Court advises plaintiff that if the fifth amended complaint does not cure the deficiencies noted in this order, the Court is not inclined to grant further leave to amend.

**I.     *Monell* Liability**

Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort, *see Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978); however, a city or county may not be held vicariously liable for the unconstitutional acts of its employees under the theory of *respondeat superior. See Board of Cty. Comm'rs. of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997); *Monell*, 436 U.S. at 691; *Fuller v. City of Oakland*, 47 F.3d 1522, 1534 (9th Cir. 1995). To establish an official policy that would give rise to *Monell* liability,

1    a plaintiff must allege facts to support one of the following to survive dismissal of its claim: (1) an
2    unconstitutional custom or policy behind the violation of rights; (2) a deliberately indifferent
3    omission, such as a failure to train or failure to have a needed policy; or (3) a final policy-maker's
4    involvement in, or ratification of, the conduct underlying the violation of rights. *Clouthier v. County*
5    *of Contra Costa*, 591 F.3d 1232, 1249-50 (9th Cir. 2010) (synthesizing authorities), *overruled on*
6    *other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016).

7    　　　The FAC alleges that CCSF had an unconstitutional pattern and practice of misusing the
8    SORT and safety cells, and that CCSF employees were not trained on the SORT and safety cells.
9    The FAC alleges that "in violation of SFSD policy, members of the SORT pinned Mr. Bell against
10   the ground . . . ." and that "[u]pon information and belief, Sergeant Williams, Deputy Bryant, Deputy
11   Bui, Deputy Daly, Deputy DeJesus, Deputy Leung, Deputy Walsh and Deputy Yeung had
12   constructive knowledge that this conduct [misusing the SORT] was unlawful, as Mr. Bell previously
13   filed a lawsuit, which remains pending, alleging similar misconduct on behalf of deputies." FAC
14   ¶ 26. With regard to the safety cells, the FAC alleges "[u]pon information and belief, CCSF has a
15   custom, policy, and/or practice of misusing safety cells to discipline detainees and have previously
16   placed Mr. Bell and other detainees, including pretrial detainees, in safety cells as an act of
17   retaliation and/or discipline." *Id.* ¶ 29. The FAC also alleges that "Defendant CCSF's employees
18   were never trained and/or were not recently retrained in some time prior to extracting Mr. Bell with
19   a SORT and placing him in a safety cell." *Id.* ¶ 45.

20   　　　Defendants contend that plaintiff's allegations are conclusory. The Court agrees. Proof of
21   random acts or isolated incidents of unconstitutional action by a non-policymaking employee is
22   insufficient to establish the existence of a municipal policy or custom. *See Rivera v. County of Los*
23   *Angeles*, 745 F.3d 384, 398 (9th Cir. 2014); *McDade v. West*, 223 F. 3d 1135, 1142 (9th Cir. 2000);
24   *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996); *Thompson v. City of Los Angeles*, 885 F.2d 1439,
25   1444 (9th Cir. 1989). The FAC does not provide any details regarding other alleged instances of
26   CCSF employees misusing a SORT or safety cell. Plaintiff generally references his earlier lawsuit,
27   filed in 2013, as support for an alleged pattern and practice. However, these conclusory and sparse
28   allegations are not sufficient to show a custom or practice. S*ee Gant v. County of Los Angeles*, 772

F.3d 608, 618 (9th Cir. 2014) (liability may not be predicated on isolated or sporadic incidents; "it must be founded on practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy"); *Bauer v. City of Pleasanton*, 3:19-cv-04593-LB, 2020 WL 1478328, at *5 (N.D. Cal. Mar. 26, 2020) ("two prior incidents . . . do not show a persistent and widespread custom" (internal quotation marks omitted); *see also Sweiha v. Cty. of Alameda*, No. 19-CV-03098-LB, 2019 WL 4848227, at *4 (N.D. Cal. Oct. 1, 2019) (five incidents with "markedly different facts" do not show a persistent and widespread custom) (internal quotation marks omitted).

Similarly, plaintiff has not alleged sufficient facts in support of a failure to train theory. "A pattern of similar constitutional violations" by untrained employees is ordinarily necessary to establish that the failure to train or supervise is a deliberate policy. *Connick v. Thompson*, 563 U.S. 51, 52 (2011). A local government's liability under § 1983 is at "its most tenuous," when the claim is based on a failure to train. *Connick*, 563 U.S. 51 at 61; *see also Cornish v. Oakland Hous. Auth.*, No. 18-CV-05947-LB, 2019 WL 1746070, at *5 (N.D. Cal. Apr. 18, 2019) (finding allegations from a prior lawsuit "are not enough to plead that the OHA should have been put on notice that different training was required").

Accordingly, the Court GRANTS defendants' motion to dismiss the *Monell* allegations and GRANTS plaintiff leave to amend. If plaintiff wishes to pursue a *Monell* claim against CCSF, plaintiff must be able to allege more than isolated or sporadic incidents; rather, plaintiff must be able to allege "practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino*, 99 F.3d at 918.

In addition, at the hearing, plaintiff informed the Court that plaintiff requests leave to allege *Monell* liability under the theory that then-Captain Fisher ratified the unconstitutional actions of the deputies. "To show ratification, a plaintiff must prove that the authorized policymakers approve a subordinate's decision and the basis for it." *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999) (citations and internal quotation marks omitted). "The policymaker must have knowledge of the constitutional violation and actually approve of it." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004). "[W]hether a particular official has 'final policymaking authority' is a question of state law. *Jett v.*

3

*Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) (quoting, with original emphasis, *St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (plurality opinion)); *see McMillian v. Monroe Cty., Ala.*, 520 U.S. 781, 786 (1997) ("the actual function of a governmental official, in a particular area, will necessarily be dependent on the definition of the official's functions under relevant state law"); *see also* Cal. Gov't Code §§ 26605, 26610; Cal. Pen. Code § 4000. If plaintiff pursues a ratification theory, plaintiff must be able to allege that a defendant with final policymaking authority approved the decisions at issue.

## II.     First Amendment Retaliation

Plaintiff alleges that the individual defendants retaliated against him after he filed a written grievance against Deputy Leung for sexual harassment. The FAC alleges that Leung singled plaintiff out for discipline, and that the other individual defendants retaliated by carrying out and/or approving the discipline. FAC ¶¶ 58-60. While the FAC alleges that the written grievance is the protected conduct, plaintiff's opposition suggests that that his initial verbal complaint, in addition to a written grievance, constitutes the protected conduct.

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

The Court concludes that the FAC does not sufficiently allege a causal link between plaintiff's protected activity and the retaliatory discipline on the part of each individual defendant. The Court will GRANT plaintiff leave to amend to clarify the nature of the protected conduct (verbal complaint, written grievance, or both), as well as the timeline when the protected conduct and retaliatory actions occurred. In addition, for each individual defendant named in the retaliation claim, plaintiff must be able to allege that the officials intended to take the adverse action out of "retaliatory animus" to "silence and to punish" the inmate – and thus had knowledge of the protected conduct – as opposed to for some other reason. *Shepard v. Quillen*, 840 F.3d 686, 689-691 (9th Cir.

4

2016). Mere speculation that defendants acted out of retaliation is not sufficient. *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (citing cases).

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendants' partial motion to dismiss and GRANTS plaintiff leave to amend. If plaintiff wishes to file an amended complaint, he must do so no later than **December 4, 2020**.

**IT IS SO ORDERED**.

Dated: November 16, 2020

_____
SUSAN ILLSTON
United States District Judge