UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT KEITH BELL,<br><br>Plaintiff,<br><br>v.<br><br>SERGEANT YVETTE WILLIAMS, *et al.*,<br><br>Defendants. | Case No. 18-cv-01245-SI<br><br>**FINAL PRETRIAL ORDER**<br><br>Re: Dkt. Nos. 148-155, 161-165 |

On March 10, 2022, the Court held a final pretrial conference in the above captioned matter, which is set for jury trial beginning March 21. All parties were represented by counsel. The following matters were resolved:

1. **Number of jurors and challenges:** There will be a jury of 8 members. Each side shall have 4 peremptory challenges. Jurors shall wear masks during the proceedings.

2. **Voir dire:** The Court will conduct general voir dire, including various of the questions requested by counsel in their proposed additional voir dire filings. Counsel for each side shall have up to 20 minutes total to question the panel. The parties are directed to meet and confer concerning a neutral, non-argumentative statement of the case which can be read to the jury panel at the beginning of the voir dire process; this statement shall be provided to the Court no later than Monday, March 14 and shall provide some explanation of the length of Mr. Bell's pretrial detention.

3. **Administrative exhaustion:** Defendants assert that Mr. Bell has not exhausted his claims that Sergeant Williams retaliated against him and that his rights under the ADA and Rehabilitation

Act were violated by being placed in the safety cell. On March 10, 2022, defendants shall lodge with the Court all administrative grievances covering the events in this case and on March 15, 2022, plaintiff shall file a brief regarding administrative exhaustion of these two claims.

4. **Witnesses:** The parties shall file amended, winnowed-down witness lists on March 15, 2022. The parties shall work with each other to schedule witnesses, since numerous witnesses appear on both witness lists, and shall provide each other 24 hours' notice of which witnesses they intend to call. By March 15, the parties shall inform the Court about whether they intend to call any remote witnesses.

5. **Trial exhibits:** No later than 3 p.m. on Friday, March 18, the parties shall submit their trial exhibits, in binders with numbered tabs separating each exhibit, and including a descriptive index at the beginning of each binder. The Court shall be provided with two sets (the originals for the file and one set for the Court). The parties shall also prepare one set for opposing counsel, in addition to their own set. Prior to introducing any confidential exhibit into evidence, counsel shall obtain permission from the Court. Any confidential exhibit admitted into evidence will be admitted in the public record, with redactions if necessary.

6. **Timing of trial:** The trial is estimated to take five days. Based on this estimate, and a review of the other materials in the Joint Pretrial Conference Statement, the Court will set the matter for a five day trial, as follows: each side shall have up to 30 minutes to present opening statements; each side shall have 8 hours total for presentation of evidence, which includes direct and cross-examination and presentation of all exhibits; and each side shall have up to 1 hour for closing argument. The parties have jointly requested bifurcation of punitive damages. Should a punitive damages phase be necessary, the Court encourages the parties to stipulate to assets to obviate the need for live testimony. Each side will have up to 30 minutes for argument in the punitive damages phase.

7.  **Trial schedule:** Jury selection will occur on March 16, 2022, at 9:00 a.m. Trial begins on March 21, 2022, at 9:00 a.m. The trial day runs from 9:00 a.m. until 4:00 p.m., with a 15 minute break at 10:15 a.m., a 30 minute break at noon and a 15 minute break at 2:00 p.m., all times approximate. The Court does not hear trials on Fridays, although juries may continue to deliberate on Fridays.

8.  **Motions in limine:** The parties filed 13 motions in limine. Docket Nos. Nos. 148-155 and 161-165. After consideration of the arguments made in the briefs and at the pretrial conference, the Court rules as follows:

Plaintiff's motion #1 requesting an order permitting plaintiff Vincent Bell to appear at trial, including jury selection, unshackled, that he have access to personal grooming tools, and that all custodial staff responsible for transporting Mr. Bell in and out of the courtroom remove and/or place shackles on him outside of the jury is DENIED as to access to personal grooming tools and GRANTED as to the balance of the motion. Plaintiff's counsel will provide Mr. Bell's clothing to the U.S. Marshal on March 15. If Mr. Bell is disruptive at trial or some reason for shackling presents itself, the Court will require Mr. Bell's non-writing hand to be shackled to his waist, out of the presence of the jury.

Plaintiff's motion #2 to bar unpled affirmative defenses is DENIED AS MOOT. Defendants state that they will not be asserting the affirmative defenses of fundamental alteration or that plaintiff posed a direct threat. Instead, defendants state they will contend that plaintiff cannot show the existence of a reasonable accommodation or that Sergeant Williams' decisions were unreasonable, and that these are negative defenses to plaintiff's *prima facie* case. *See Pierce v. County of Orange*, 526 F.3d 1190, 1216-17 (9th Cir. 2008) (discussing ADA claims in prison context).

Plaintiff's motion #3 to preclude defendants from calling witnesses not included in their initial disclosures is DENIED as to Captain Kevin McConnell, since plaintiff concedes there is no prejudice because Captain McConnell was deposed; DENIED as to the San Francisco General Hospital Custodian of Records, as this person will be called solely to authenticate plaintiff's medical records (the parties are encouraged to stipulate to authenticity, where appropriate); GRANTED as

1   to Deputy Ruiz and Nurse DeGuzman, except that defendants may call these witnesses for
2   impeachment purposes. Counsel stated that they would attempt to reach a stipulation as to the
3   authenticity, and possibly admissibility, of the medical records.

4   Plaintiff's motion #4 to exclude defendant's expert from testifying about the ultimate issues
5   and information for which no foundation has been laid is GRANTED AS FRAMED. None of the
6   experts will be permitted to present legal conclusions nor should they rely on hypothetical facts that
7   have no foundation in evidence. The Court is not excluding any particular testimony at this time,
8   and plaintiff may raise specific objections to specific questions at trial.

9   Plaintiff's motion #5 to exclude prejudicial evidence of convictions and other bad acts is
10  GRANTED as to plaintiff's juvenile record; DENIED as to plaintiff's 2012 arrest charges for which
11  is he currently detained as those are relevant to Sergeant Williams' knowledge about plaintiff;
12  DENIED as to requests for discipline for contraband insofar as those are relevant to Sergeant
13  Williams' knowledge and plaintiff's prior experiences in the safety cell – an issue about which both
14  sides wish to present evidence; and GRANTED as to plaintiff's 2001, 2011, and 2012 convictions
15  as these convictions are more than 10 years old and defendants have not shown that their probative
16  value substantially outweighs their prejudicial effect. *See* Fed. Rule of Evid. 609(b). The parties
17  shall jointly prepare a neutral statement of plaintiff's 2012 charges, which shall be used by any
18  witness testifying as to the charges.

19  Defendants' motion #1 to exclude or limit the opinion testimony of plaintiff's expert Stephen
20  Sinclair is DENIED without prejudice to specific objections at the time of trial. Defendants'
21  argument that all of Mr. Sinclair's testimony is irrelevant because he worked in the Washington
22  correctional system and not in California goes to the weight and not the admissibility of his
23  testimony. Provided plaintiff lays a proper foundation, Mr. Sinclair may testify about his opinions
24  regarding best practices for cell extractions, use of the safety cell, and reviewing surveillance video
25  footage, and defendants may raise specific objections and/or cross-examine him. Finally, as to the
26  purportedly "new" opinions in Mr. Sinclair's amended report, the Court finds that these are not new
27  opinions but rather add details and opinions are closely related to the matters discussed in the
28  original report and on which Mr. Sinclair was deposed.

1    Defendants' motion #2 to exclude evidence or argument that the S.O.R.T. cell extraction
2    and safety cell policies are facially unconstitutional is GRANTED AS FRAMED. Plaintiff states
3    that he is not contending that those policies are facially unconstitutional. However, plaintiff may
4    present evidence and argue that the policies were violated, and plaintiff may argue that the policies'
5    failure to specifically address prisoners with disabilities, insofar as that relates to training of
6    deputies, caused plaintiff's constitutional rights to be violated.

7    Defendants' motion #3 to exclude evidence and argument of other alleged safety cell misuse
8    is GRANTED as to the news article; DENIED as to plaintiff's own experiences in the safety cell;
9    GRANTED as to the four summary judgment declarants (they are not on plaintiff's witness list so
10   this appears to be a moot issue); DENIED as to the safety cell data (plaintiff's exhibit #38) provided
11   plaintiff lays a foundation, demonstrates relevance, and has a sponsoring witness.

12   Defendants' motion #4 to exclude evidence or argument that cell extractions are inherently
13   violent is DENIED without prejudice to specific objections at the time of trial.

14   Defendants' motion #5 to exclude evidence regarding other claims, complaints, allegations,
15   investigations, discipline, or other lawsuits related to defendants and their witnesses for excessive
16   force or other misconduct is DENIED to the extent that any such evidence is relevant to plaintiff's
17   *Monell* claim based on failure to train deputies about S.O.R.T. cell extraction or safety cell
18   placement of prisoners with disabilities, and DENIED to the extent that any such evidence is used
19   for impeachment purposes. The one specific example that defense counsel provided at the hearing
20   would not appear to be relevant to any of plaintiff's claims and would not be admitted. Plaintiff
21   must obtain permission of the Court prior to seeking to introduce any such evidence.

22   Defendants' motion #6 to exclude argument or evidence about "missing" evidence is
23   GRANTED as framed. No witness shall testify about "missing" surveillance footage. If plaintiff
24   wishes to introduce evidence about surveillance cameras at the jail, plaintiff must first make an offer
25   of proof to the Court outside the presence of the jury.

26   Defendants' motion #7 to exclude lay opinion testimony concerning San Francisco Sheriff's
27   Office practices or medical evidence is GRANTED as to plaintiff's opinion testimony about SFSO
28   practices or policies and DENIED to the extent defendants seek to preclude plaintiff from testifying

1  about what he experienced with regard to his injuries and what he believes he required as an
2  accommodation for his disability.  Mr. Bell may not testify about medical causation.

3  Defendants' motion #8 to exclude evidence and argument on issues already summarily
4  adjudicated and/or never alleged is DENIED without prejudice to specific objections at the time of
5  trial.  Although the Court has dismissed a number of plaintiff's claims on summary judgment,
6  evidence related to those claims may still be relevant to plaintiff's remaining claims and/or relevant
7  to provide factual context.  As discussed at the hearing, Mr. Bell may not testify about Deputy
8  Leung's intent in issuing the RFD, and must limit his testimony to describing the events that
9  occurred.

11  9.  **Other Matters**:  All jurors, counsel and trial team members, parties and party
12  representatives, and members of the public are required to be fully vaccinated, including a booster
13  shot if eligible.  It is the Court's preference that witnesses and law enforcement also be fully
14  vaccinated, including a booster shot if eligible.  In any event, all of these individuals will be required
15  to wear a mask in the courtroom.  Fully vaccinated witnesses on the witness stand may take off their
16  masks, and counsel questioning the witness may do so also.  All efforts should be made to social
17  distance.

19  **IT IS SO ORDERED**.

21  Dated: March 10, 2022

    SUSAN ILLSTON
    United States District Judge