DAN SIEGEL, SBN 56400
EMILYROSE JOHNS, SBN 294319
ANDREW CHAN KIM, SBN 315331
SIEGEL, YEE, BRUNNER & MEHTA
475 14th Street, Suite 500
Oakland, California 94612
Telephone: (510) 839-1200
Facsimile: (510) 444-6698
Email: danmsiegel@gmail.com;
emilyrose@siegelyee.com;
chankim@siegelyee.com

Attorneys for Plaintiff
VINCENT KEITH BELL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT KEITH BELL, | Case No.: 3:18-cv-01245-SI |
| Plaintiff, | **PLAINTIFF VINCENT BELL'S MOTION FOR ATTORNEYS' FEES AND COSTS** |
| vs. | **Date**:  January 27, 2023 |
| YVETTE WILLIAMS and CITY AND COUNTY OF SAN FRANCISCO, | **Time**:  10:00 a.m.<br>**Ctrm**:  Courtroom 1, 17th Floor |
| Defendants. | |

*Bell v. Williams*, 3:18-cv-01245-SI
Plaintiff's Notice of Motion and Motion for Attorney's Fees and Costs

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

NOTICE IS HEREBY GIVEN that on January 27, 2023, at 10 a.m. in Courtroom 1, 17th Floor of 450 Golden Gate Ave., San Francisco, CA, 94102, plaintiff Mr. Vincent Bell will, and hereby does, move the Court for an order awarding him attorney's fees and costs pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 12205; and 29 U.S.C. § 794.

This motion is made pursuant to Federal Rule of Civil Procedure, Rule 54(d)(2)(a) and Local Civil Rule 54-4. This motion is further based on this Notice, the Memorandum of Points and Authorities below, the declarations of Dan Siegel, EmilyRose Johns, Andrew Chan Kim, Jordan Steger, Dan Stormer, Panos Lagos, Sanjay S. Schmidt, and Jenny C. Huang filed herewith and all exhibits attached thereto, the Court's file in this matter, and on such oral and/or documentary evidence as may be presented at the hearing of this motion.

## TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................... 1

II.     STATEMENT OF FACTS ....................................................................................... 1

III.    ARGUMENT............................................................................................................4

    A.   Mr. Bell is the Prevailing Party. .................................................................4

    B.   Plaintiff's Counsel Should be Awarded His Full Compensatory Fee. ...........................4

    C.   Awarding Substantial Attorney's Fees Meets the Fundamental Objective of Encouraging Meritorious Civil Rights/ADA Cases. .................................................6

    D.   Plaintiffs' Sought Lodestar Award is Reasonable...................................................6

    E.   Application of the *Kerr* factors Justifies the Full Amount of Attorneys' Fees Requested. ...........................................................................................10

        1.   The Time and Labor Required Supports this Fee Award...............................10

        2.   The Novelty and the Difficulty of the Questions Involved Supports this Fee Award. ..................................................................................11

        3.   The Undesirability of the Case Supports this Fee Award............................. 12

        4.   The Amount of Time Involved and the Results Obtained Supports this Fee Award. ..................................................................................12

        5.   The Customary Fee Supports this Fee Award. ....................................... 13

        6.   The Contingency of this Case Supports this Fee Award................................ 13

    F.   The Court Should Apply a Multiplier to this Case.................................................. 14

    G.   Mr. Bell's Necessary Costs Are Also Compensable..................................................19

    H.   The Prison Litigation Reform Act Does Not Limit Fees in this Matter. .................... 21

        1.   PLRA Does Not Limit the Hourly Rate Where Plaintiff Wins on ADA and RA Claims............................................................................... 21

        2.   PLRA Fee Caps Do Not Apply to Cases with Equitable Relief. .......................22

IV.     CONCLUSION........................................................................................................22

1

# TABLE OF AUTHORITIES

2

**FEDERAL CASES**

3

*A.D. v. State of California Highway Patrol,*
2013 WL 6199577, at *1 (N.D. Cal. Nov. 27, 2013) ...................................................... 7

4

*Armstrong v. Davis,*
318 F.3d 965 (9th Cir. 2003) .......................................................................................... 21

5

6

*Asberry v. City of Sacramento/Sanitation Dep't,*
2004 WL 3636054, at *1 (E.D. Cal. Apr. 5, 2004) ........................................................ 17

7

8

*Barjon v. Dalton,*
132 F. 3d 496 (9th Cir. 1997) ......................................................................................... 13

9

*Barrios v. California Interscholastic Fed'n,*
277 F.3d 1128 (9th Cir. 2002) .......................................................................................... 4

10

*Barrios v. California Interscholastic Fed'n,*
277 F.3d 1128 (9th Cir. 2002) ........................................................................................ 13

11

12

*Blackwell v. Foley,*
724 F. Supp. 2d 1068 (N.D. Cal. 2010) ........................................................................... 6

13

*Blum v. Stenson,*
465 U.S. 886 (1984) ........................................................................................................ 13

14

15

*Bouman v. Block,*
940 F.2d 1211 (9th Cir.1991) ........................................................................................... 7

16

*Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.,*
532 U.S. 598 (2001) .......................................................................................................... 4

17

18

*Californians for Disability Rts. v. California Dep't of Transp.,*
2010 WL 8746910, at *1 (N.D. Cal. Dec. 13, 2010) ....................................................... 8

19

*Carson v. Billings Police Depart.,*
470 F.3d 889 (9th Cir. 2005) .......................................................................................... 13

20

*Chalmers v. City of Los Angeles,*
676 F. Supp. 1515 (C.D. Cal. 1987) .......................................................................... 14, 19

21

22

*Common Cause v. Jones,*
235 F. Supp. 2d 1076 (C.D. Cal. 2002) ......................................................................... 13

23

*Cotton v. City of Eureka, Cal.,*
899 F. Supp. 2d 1154 (N.D. Cal. 2012) ......................................................................... 20

24

25

*Craft v. Cnty. of San Bernardino,*
624 F. Supp. 2d 1113 (C.D. Cal. 2008) ......................................................................... 15

26

*Dannenberg v. Valadez,*
338 F.3d 1070 (9th Cir. 2003) ........................................................................................ 22

27

28

*Davis v. City & Cnty. of San Francisco*,
  976 F.2d 1536 (9th Cir. 1992) .................................................................................7

*DL v. District of Columbia*,
  267 F.Supp.3d 55 (D.D.C. 2017) .............................................................................7

*Edmo v. Idaho Dep't of Correction*,
  2022 WL 16860011, at *1 (D. Idaho Sept. 30, 2022) ...............................................17, 19

*Gonzalez v. City of Maywood*,
  729 F.3d 1196 (9th Cir. 2013) ............................................................................... 13

*Guam Soc'y of Obstetricians & Gynecologists v. Ada*,
  100 F.3d 691 (9th Cir. 1996) ................................................................................ 14

*Harris v. Maricopa County Superior Court*,
  631 F.3d 963 (9th Cir. 2011) ................................................................................ 12

*Heilman v. Cherniss*,
  2019 WL 265108, at *1 (E.D. Cal. Jan. 18, 2019) ....................................................11

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ........................................................................................ 4, 5, 7

*Hum. Rts. Def. Ctr. v. Cnty. of Napa*,
  2021 WL 1176640 (N.D. Cal. Mar. 28, 2021) ........................................................ 15

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir.2011) ................................................................................. 10

*Johnson v. Ballew*,
  2020 WL 1923173, at *1 (E.D. Cal. Apr. 21, 2020) ................................................. 19

*Jones v. Diamond*,
  636 F.2d 1364 (5th Cir. 1981) ............................................................................. 5, 13

*Kelly v. Wengler*,
  822 F.3d 1085 (9th Cir. 2016) ........................................................................... 14, 16

*Kerr v. Screen Guild Extras, Inc.*,
  526 F.2d 67 (9th Cir. 1975) .................................................................................. 10

*Labotest, Inc. v. Bonta*,
  297 F.3d 892 (9th Cir. 2002) ..................................................................................4

*Lovell v. Chandler*,
  303 F.3d 1039 (9th Cir. 2002) .............................................................................. 19

*McCown v. City of Fontana*,
  565 F.3d 1097 (9th Cir. 2009)..................................................................................5

*Missouri v. Jenkins by Agyei*,
  491 U.S. 274 (1989) ..............................................................................................7

*Mitchell v. Chavez*,
  2018 WL 3218364, at *1 (E.D. Cal. June 29, 2018) ....................................... 6, 15, 16, 17

*Morales v. City of San Rafael,*
   96 F.3d 359 (9th Cir. 1996) ................................................................................6

*Moreno v. City of Sacramento,*
   534 F.3d 1106 (9th Cir. 2008) .....................................................................10, 11

*Nat'l Fed'n of the Blind of Cal. v. Uber Techs., Inc.,*
   No. 14–cv–4086–NC (N.D. Cal. Dec. 6, 2016) ...............................................8

*Newman v. Piggie Park Enterprises,* Inc.,
   390 U.S. 400 (1968) .......................................................................................12

*Notter v. City of Pleasant Hill,*
   2017 WL 5972698, at *1 (N.D. Cal. Nov. 30, 2017) ....................................20

*Oberfelder v. City of Petaluma,*
   2002 WL 472308, at *1 (N.D. Cal. Jan. 29, 2002) .......................................16

*Oldoerp v. Wells Fargo & CompanyLong Term Disability Plan,*
   2014 WL 2621202, at *1 (N.D. Cal. June 12, 2014) ......................................8

*Perdue v. Kenny A. ex. Rel. Winn,*
   559 U.S. 542 (2010) ..................................................................................15, 17

*Quevedo v. New Albertsons, Inc,*
   2015 WL 10939716, at *1 (C.D. Cal. May 27, 2015) ...................................15

*Ridgeway v. Wal-Mart Stores Inc.,*
   269 F. Supp. 3d 975 (N.D. Cal. 2017) ................................................... 7, 8, 9

*Rodriguez v. Cnty. of Los Angeles,*
   891 F.3d 776 (9th Cir. 2018) .........................................................................21

*Rodriguez v. Cnty. of Los Angeles,*
   96 F. Supp. 3d 1012 (C.D. Cal. 2014) ..........................................................18

*Santiago v. Equable Ascent Fin.,*
   2013 WL 3498079, at *1 (N.D. Cal. July 12, 2013) .....................................20

*Stanford Daily v. Zurcher,*
   64 F.R.D. 680 (N.D.Cal.1974) .........................................................................5

*Stanger v. China Elec. Motor, Inc.,*
   812 F.3d 734 (9th Cir. 2016) .........................................................................16

*Stetson v. Grissom,*
   821 F.3d 1157 (9th Cir. 2016) .................................................................10, 16

*United Steelworkers of Am. v. Phelps Dodge Corp.,*
   896 F.2d 403 (9th Cir. 1990) ...........................................................................7

*Withrow v. Stryker Sales Corp.,*
   2018 WL 5858609, at *1 (C.D. Cal. Mar. 27, 2018) ....................................15

*Woods v. Carey,*
   722 F.3d 1177(9th Cir. 2013) ............................................................... 6, 12, 16

*Yates v. Mobile County Personnel Bd.,*
  719 F.2d 1530 (11th Cir. 1983) ................................................. 13, 14

**STATUTES**

29 U.S.C. § 794 ........................................................................ 21

42 U.S.C § 1997e(d) ................................................................. 21

42 U.S.C. § 12205 .................................................................... 21

42 U.S.C.A. § 1997e (d)(3) ........................................................ 21

**TREATISES**

Margo Schlanger, Inmate Litigation, 116 Harv.L.Rev. 1555 (2003) ................................................. 6

## I.    INTRODUCTION

On March 30, 2022, eight jurors unanimously found that defendant City and County of San Francisco failed to train its employees sufficiently to refrain from violating plaintiff Vincent Keith Bell's right to be free from excessive force and that defendant City and County of San Francisco violated Mr. Bell's right to be free from disability discrimination under the Americans with Disabilities Act and the Rehabilitation Act of 1973, and awarded him $504,000 in damages. (ECF No. 228.) On October 18, 2022, following a hearing on each parties' proposal for injunctive relief, the Court issued a judgment in the case. (ECF Nos. 266, 267.) The judgment awarded Mr. Bell: (1) $504,000 in compensatory damages from the City and County of San Francisco; and (2) an injunction requiring the City and County of San Francisco to modify its policies on safety cell placements and SORT cell extractions to require staff to consider reasonable accommodations, including during the planning phase of a SORT cell extraction, when transporting an inmate with known mobility issues. (ECF No. 267.) Mr. Bell had substantial success on his claims and is the prevailing party, and he seeks the award of attorneys' fees and costs as permitted by 42 U.S.C. § 1988, 42 U.S.C. § 12205; and 29 U.S.C. § 794.

## II.    STATEMENT OF FACTS

Mr. Bell filed his case pro se on February 26, 2018. (ECF No. 1.) On January 23, 2020, Chan Kim made his appearance in Mr. Bell's case. (ECF No. 28.) In March, when Mr. Kim joined the law firm Siegel, Yee, Brunner & Mehta, Dan Siegel and EmilyRose Johns made their appearances. (ECF Nos. 37, 39.) Ms. Johns was lead trial counsel and Mr. Kim was second chair. They were assisted by Jordan Steger, a paralegal with their firm. The firm accepted Mr. Bell's case on full contingency. (Declaration of EmilyRose Johns in Support of Plaintiff Vincent Bell's Motion for Attorney's Fees and Costs ("Johns Decl.") ¶ 10.)

After Mr. Siegel and Ms. Johns entered their appearances, they sought permission from the Court to file a Third Amended Complaint, the first that Mr. Bell filed with the assistance of counsel. (ECF No. 41.) The Court granted Mr. Bell's request and on April 24, 2020, Mr. Bell filed the Third Amended Complaint. (ECF Nos. 42, 43.) Defendants Answered Mr. Bell's Third Amended Complaint. (ECF No. 44.) After receiving initial discovery, Mr. Bell sought to file a Fourth Amended Complaint to include new theories of liability. (ECF No. 52.) Defendants stated

that they would oppose any motion for leave to amend. (ECF No. 52 at 2.) However, as Mr. Bell proceeded originally without counsel and as leave to amend should be liberally granted, the Court permitted Mr. Bell to file his Fourth Amended Complaint. (ECF No. 55.) Defendants moved to dismiss the new claims in Mr. Bell's Fourth Amended Complaint. (ECF No. 60.) The Court granted defendants' motion and permitted Mr. Bell leave to amend his complaint to cure the defects. (ECF No. 70.) Mr. Bell carefully considered the Court's order and filed his Fifth Amended Complaint with new allegations to support the two challenged claims. (ECF No. 72.) Defendants again moved to dismiss Mr. Bell's Fifth Amended Complaint. (ECF No. 75.) The Court denied defendants' motion and settled the pleadings. (ECF No. 84.)

During the pendency of the case, the parties participated in six pre-trial settlement conferences with magistrate judge Robert Illman. (Johns Decl. ¶ 16; ECF Nos. 51, 67, 90, 105, 143, 147.) At each conference, defendants did not make a single offer to settle the case, despite Mr. Bell making opening demands of far less than the jury awarded him at trial. (Johns Decl. ¶ 16.) Plaintiff sought to preserve costs and fees before every settlement conference, including by stipulating to put off expert discovery until after the parties could attend their fourth settlement conference. (ECF No. 92.) Plaintiff also tried to encourage settlement by offering a global settlement demand to resolve this case and his other case before the Court over an earlier matter for which he had appointed counsel. (ECF No. 51.)

Counsel for Mr. Bell was diligent and conservative with resources in this case, taking only the depositions that were absolutely necessary and relying heavily on written discovery and written records to minimize costs in this case. (Johns Decl. ¶ 13.) Counsel elected not to depose defendants' three designated experts and successfully disposed of the testimony of the two experts they presented at trial relying only on their written reports. (Johns Decl. ¶ 14.)

At summary judgment, the Court dismissed defendant Michele Fisher, and granted defendants Anthony Bryant, Johnson Bui, Robert Daly, Kristian DeJesus, Dennis Walsh, and Robert Yeung qualified immunity for their actions. (ECF No. 130.) The Court allowed Mr. Bell to proceed on all of his claims against Yvette Williams and the City and County of San Francisco. (ECF No. 130.)

Beginning on March 21, 2022, the Court held a five-day trial wherein Mr. Bell put on a compelling and concise case. After one full day and two partial days of deliberation, the jury returned a verdict for Mr. Bell on four of his six claims. (ECF No. 228.) The jury awarded Mr. Bell $504,000 in damages and found that the City and County of San Francisco failed to train their deputies to refrain from using excessive force. (ECF No. 228.) Following the jury verdict, Mr. Bell proposed injunctive relief that was adopted in significant part by the Court. (ECF No. 267.) The injunctive relief requires "the City and County of San Francisco to modify its policies on safety cell placements and SORT cell extractions to require staff to consider reasonable accommodations, including during the planning phase of a SORT cell extraction, when transporting an inmate with known mobility issues." (ECF No. 267.) The injunction requires CCSF to document with specificity the justification for failing to accommodate a prisoner and to consult with medical staff in non-emergency situations before "removing or denying a medically prescribed device when moving an inmate into a safety cell or performing a SORT cell extraction." (ECF No. 267.) The inunction also requires CCSF to train its staff in the modified policies within six months of the issuance of the modified policies. (ECF No. 267.)

Mr. Siegel, Ms. Johns, Mr. Kim and Mr. Steger seek an award of their Lodestar for their exceptional success in this case, which was an "undesirable" case on behalf of a person detained pretrial for murder and that presented novel and difficult questions, required tremendous skill, and achieved a resounding favorable monetary relief and injunctive relief result on important civil rights issues.

| Name | Role | Rate | Hours | Total |
|---|---|---|---|---|
| Dan Siegel | Partner | $919 | 17 | $15,623 |
| EmilyRose Johns | Senior Associate and Lead Trial Counsel | $675 | 346.3 | $233,752.50 |
| Chan Kim | Associate and Second Chair | $465 | 472 | $219,480 |
| Jordan Steger | Paralegal | $250 | 284.8 | $71,200 |

Plaintiff also seeks reimbursement for the costs of his expert, Steven Sinclair, in the amount of $18,891.23.

In addition, given the significant risk in this case, and where defendants did not make a single offer to settle prior to trial, plaintiffs' counsel seeks a multiplier of 2.0.

## III. ARGUMENT

### A. Mr. Bell is the Prevailing Party.

Mr. Bell is entitled to recovery attorneys' fees and costs as the prevailing party because he received a final judgment against the defendants on his section 1983 excessive force claim, his *Monell* claim, and his ADA and RA claims. *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 604 (2001) (prevailing party is party who receives a final judgment against the other); *Labotest, Inc. v. Bonta*, 297 F.3d 892, 894 (9th Cir. 2002) ("A § 1983 plaintiff who obtains a final judgment against a defendant is, of course, a prevailing party for attorney's fees purposes under § 1988."). "The ADA, specifically 42 U.S.C. § 12205, permits the 'prevailing party' to seek attorneys' fees and costs." *Barrios v. California Interscholastic Fed'n*, 277 F.3d 1128, 1134 (9th Cir. 2002). "The Supreme Court has held that a prevailing plaintiff under a statute so worded 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) (citation and internal quotation marks omitted)).

### B. Plaintiff's Counsel Should be Awarded His Full Compensatory Fee.

Mr. Bell had exceptional results, succeeding on four of his six claims against defendant Williams and the City and County of San Francisco—the other eight defendants were dismissed at summary judgment due to qualified immunity. (ECF No. 130.)

According to Supreme Court precedent:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

*Hensley*, 461 U.S. at 435. "[I]n a lawsuit where the plaintiff presents different claims for relief that 'involve a common core of facts' or are based on 'related legal theories,' the district court should not attempt to divide the request for attorney's fees on a claim-by-claim basis." *McCown v. City of Fontana*, 565 F.3d 1097, 1103 (9th Cir. 2009).

When examining whether to give the full fee to a civil rights litigant, the Fifth Circuit explained

> In fixing the fee, the district court should be mindful that in complex civil rights litigation, and particularly in prisoners' rights cases, issues are overlapping and intertwined. In order to represent their clients adequately, attorneys must explore fully every aspect of the case, develop all of the evidence and present it to the court. Time spent pursuing unsuccessful claims that were clearly without merit should be excluded. However, the mere fact that the litigants did not succeed in obtaining a judgment on all of the claims asserted does not mean that time spent pursuing these claims should automatically be disallowed. . . . Instead the court must consider the relationship of the claims that resulted in judgment with the claims that were rejected and the contribution, if any, made to success by the investigation and prosecution of the entire case.

*Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981), *overruled on other grounds by Int'l Woodworkers of Am.*, *AFL-CIO & its Loc. No. 5-376 v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir. 1986). *See also Stanford Daily v. Zurcher*, 64 F.R.D. 680, 684 (N.D.Cal.1974), *aff'd*, 550 F.2d 464 (9th Cir. 1977), *rev'd on other grounds*, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978) (cited with approval in S.Rep.No. 94-1011, 94th Cong.2d Sess. 6, reprinted in (1976) U.S. Code Cong. & Ad. News, pp. 5908, 5913).

Here, Mr. Bell's lawsuit arose out of a common core of facts—it addressed a single incident where Mr. Bell was cell extracted, forced to hop on his one leg while handcuffed, dragged, and placed in a safety cell for 24 hours. Mr. Bell asserted that defendants' conduct violated his right to be free from excessive force and his right to a reasonable accommodation and to be free from disability discrimination under the ADA and RA, which he succeeded on, and his right to be free from punishment without due process and right to be free from First Amendment retaliation, which he did not. These alternative legal grounds for reaching Mr. Bell's desired outcome are not a sufficient reason to reduce the fees in this case. *Hensley*, 461 U.S. at 435.

The jury awarded Mr. Bell $504,000. (ECF No. 228.) This is a tremendous result, considering the jury awards often seen in prisoners rights cases. *See Woods v. Carey*, 722 F.3d 1177, 1183 n.6 (9th Cir. 2013) (a survey of verdicts shows that "'mean damages for cases won at trial by inmate civil rights plaintiffs was $18,800, and the median was a mere $1000.'") (quoting Margo Schlanger, Inmate Litigation, 116 Harv.L.Rev. 1555, 1706 n.158 (2003)). *See also Mitchell v. Chavez*, No. 113CV01324DADEPG, 2018 WL 3218364, at *15 (E.D. Cal. June 29, 2018) (finding a jury award of $100,000 that settled post trial for $160,000 an "excellent result for their client.") In addition to Mr. Bell's resounding success on his monetary claims, Mr. Bell proved his *Monell* claim and achieved significant equitable relief against the City and County of San Francisco. Mr. Bell should receive his full compensatory amount because he secured a "significant nonmonetary result[]" for "himself and other members of society." *Morales v. City of San Rafael*, 96 F.3d 359, 365 (9th Cir. 1996), *opinion amended on denial of reh'g*, 108 F.3d 981 (9th Cir. 1997).

## C. Awarding Substantial Attorney's Fees Meets the Fundamental Objective of Encouraging Meritorious Civil Rights/ADA Cases.

To ensure that there are attorneys willing to perform the important function of securing the rights of disabled persons to "full participation in the social and economic life of the state" and to "full and equal access," Congress found it necessary to provide substantial compensation for this work. *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1075 (N.D. Cal. 2010). "Encouraging competent attorneys to handle ADA cases is necessary for effective enforcement." *Id.* Courts have found that "[d]espite efforts made over the last 30 [now 40] years to encourage attorneys to handle California law disability rights cases which seek public interest injunctive relief (and, since 1990, ADA cases), relatively few competent private attorneys have been willing to do so." *Id.* at 1076.

This was a most difficult case because of the strong resistance Mr. Bell encountered throughout several years of litigation. Throughout litigation, CCSF insisted that it did nothing inappropriate. A jury and the Court resoundingly disagreed, and CCSF will have to make changes to their policy and retrain all sworn officers. (ECF No. 267.)

## D. Plaintiffs' Sought Lodestar Award is Reasonable.

"Ordinarily, the trial court's starting point in fee-shifting cases is to calculate a lodestar; that is, to determine the base amount of the fee to which the prevailing party is entitled by

1   multiplying the number of hours productively expended by counsel times a reasonable hourly

2   rate." *Hensley,* 461 U.S. at 433. A court assessing attorneys' fees begins with a touchstone or

3   lodestar figure, based on the "careful compilation of the time spent and reasonable hourly

4   compensation of each attorney . . . involved in the presentation of the case." *Id.* at 434-35. In

5   calculating the reasonable rate for their skilled work, counsel refers to the 2017 order in *Ridgeway*

6   *v. Wal-Mart Stores Inc.,* 269 F. Supp. 3d 975 (N.D. Cal. 2017) and the Laffey Matrix, which has

7   been utilized in establishing the hourly rates for counsel in a number of cases. *See, e.g.*, *DL v. District*

8   *of Columbia,* 267 F.Supp.3d 55, 69 (D.D.C. 2017). "Affidavits of the plaintiffs' attorney and other

9   attorneys regarding prevailing fees in the community, and rate determinations in other cases,

10   particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the

11   prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407

12   (9th Cir. 1990).

13       Counsel also seeks the rates applicable today, where the contingency nature of the case

14   resulted in a delay in payment. This method of calculating the lodestar is approved by the Supreme

15   Court. In *Missouri v. Jenkins by Agyei*, 491 U.S. 274 (1989), the Court stated found that:

16           Clearly, compensation received several years after the services were
             rendered—as it frequently is in complex civil rights litigation—is not
17           equivalent to the same dollar amount received reasonably promptly as the
             legal services are performed, as would normally be the case with private
18           billings. We agree, therefore, that an appropriate adjustment for delay in
             payment—whether by the application of current rather than historic
19           hourly rates or otherwise—is within the contemplation of [section 1988].

20   491 U.S. at 283–84. *See also Davis v. City & Cnty. of San Francisco*, 976 F.2d 1536, 1548 (9th Cir.

21   1992), *opinion vacated in part on denial of reh'g*, 984 F.2d 345 (9th Cir. 1993) ("We have also

22   approved the use of current billing rates to 'compensate for the delay in receiving payment. This

23   adjustment [will] take into account lost interest and inflation.'" (quoting *Bouman v. Block*, 940

24   F.2d 1211, 1235 (9th Cir.1991) (citation omitted)); *A.D. v. State of California Highway Patrol*, No.

25   C 07-5483 SI, 2013 WL 6199577, at *5 (N.D. Cal. Nov. 27, 2013) (the delay in payment justifies

26   awarding the current rate).

27       Mr. Siegel, Ms. Johns, Mr. Kim and Mr. Steger submit with this motion their respective

28   declarations demonstrating the reasonableness of their requested lodestar. Mr. Siegel expended 17

hours on this case, editing initial documents in this case, participating in team meetings, and consulting with Ms. Johns and Mr. Kim on matters related to the trial. (Declaration of Dan Siegel in Support of Plaintiff's Motion for Attorney's Fees ("Siegel Decl.") ¶ 11.) Mr. Siegel seeks $919 an hour for the hours spent on this matter. This rate reflects the Laffey Matrix's rate for an attorney with 20 + years out of law school and is slightly above the rate awarded Mr. Siegel's classmate in the 2017 *Ridgeway* order. (Siegel Decl. ¶ 7, Ex. B, ¶ 13.) Ms. Johns expended 346.3 hours on this case. Her hours were necessary to perform the discovery work, legal research and briefing, preparation for trial, performance at trial that was necessary to achieve the significant relief that Mr. Bell received, and reflects hours spent on post-trial briefing including the subject motion. (Ex A to Johns Decl.) Ms. Johns' requested rate of $675 mirrors the 6/01/21- 5/31/22 Laffey Matrix's rate for an attorney with 8-10 years out of law school. (Ex. B, Siegel Decl., ¶ 13.) Her requested rate also reflects the leadership role she had in the case with minimal input from Mr. Siegel, the only partner assigned to the case. In 2010, Judge Maria-Elena James awarded an attorney with 10 years of experience $570 for her work on a disability rights case. *Californians for Disability Rts. v. California Dep't of Transp.*, No. C 06-05125 SBA MEJ, 2010 WL 8746910, at *13 (N.D. Cal. Dec. 13, 2010), *report and recommendation adopted sub nom. Californians for Disability Rts., Inc. v. California Dep't of Transp.*, No. C 06-5125 SBA, 2011 WL 8180376 (N.D. Cal. Feb. 2, 2011). In 2014, Judge Richard Seeborg awarded lead counsel a rate of $600/hour. *Oldoerp v. Wells Fargo & CompanyLong Term Disability Plan*, No. 3:08-CV-05278 RS, 2014 WL 2621202, at *2 (N.D. Cal. June 12, 2014). Although the *Ridgeway* order does not have a rate for someone with comparable experience to Ms. Johns, the Court's order referred to Judge Nathanael Cousins' award in *Nat'l Fed'n of the Blind of Cal. v. Uber Techs., Inc.*, No. 14–cv–4086–NC (N.D. Cal. Dec. 6, 2016) which found $645 to be a reasonable rate for an attorney with 11 years of experience. 269 F. Supp. 3d at 986.

Mr. Kim seeks $465 for his significant work in this matter. Mr. Kim has comparable years of experience to attorney Jennifer Vagel in the *Ridgeway* matter, who was awarded $425 for her work. 269 F. Supp. 3d at 985. The Laffey Matrix sets the prevailing rate for attorneys with 4-7 years of experience at $468. (Ex. B, Siegel Decl., ¶ 13.)

Finally, Mr. Steger seeks a rate of $250 for his work on this matter. (Declaration of Jordan Steger in Support of Plaintiff Vincent Bell's Motion for Attorneys' Fees ("Steger Decl.") ¶ 5.) Mr. Steger was the lead paralegal on this case. (Steger Decl. ¶6.) In the 2017 *Ridgeway* order, the Court awarded a senior paralegal $225 for her work in collaboration with other paralegals. 269 F. Supp. 3d at 985.

Dan Stormer prepared a declaration in support of plaintiffs' request for attorneys' fees. Mr. Stormer is a founding partner at Hadsell Stormer Renick & Dai LLP. (Declaration of Dan Stormer in Support of Plaintiff Vincent Bell's Motion for Attorneys' Fees ("Stormer Decl.") ¶2.) Mr. Stormer is a highly experienced litigator who has received numerous awards in recognition of his superior knowledge and performance. (Stormer Decl. ¶¶ 3-10.) Mr. Stormer litigates civil rights cases prisoners' rights and police misconduct cases and is very familiar with the economics of running a legal practice. (Stormer Decl. ¶¶ 12-17.) Mr. Stormer states that an award of $919 for Mr. Siegel, $675 for Ms. Johns, and $465 for Mr. Kim is reasonable. (Stormer Decl. ¶¶ 22-24.)

Panos Lagos prepared a declaration in support of plaintiff's request for attorneys' fees. He states of Mr. Kim's requested lodestar rate: "In my opinion and based on my experience and research of rates charged by attorneys of similar years, experience, and caliber, the lodestar rate ($465.00/hour) that Mr. Kim is seeking is in line with attorneys with his level of expertise by both defense and plaintiffs' lawyers with commensurate experiences." (Declaration of Panos Lagos in Support of Plaintiff's Motion for Attorneys' Fees, ¶11.)

Jenny C. Huang also prepared a declaration in support of plaintiffs' request for attorneys' fees. Ms. Huang has her own civil rights practice and has served on the civil rights pro bono panel for the Eastern District of California, as pro bono counsel for California prisoners. (Declaration of Jenny C. Huang in Support of Plaintiff's Motion for Attorneys' Fees ("Huang Decl.") ¶ 7.) She was awarded the Joe Ramsey Award for Excellence in Pro Bono Service in 2019 and has been selected for to the California Super Lawyer list since 2020. (Huang Decl. ¶¶ 7-8.) Ms. Huang regards the award in this case as "outstanding". (Huang Decl. ¶ 13.) She states of plaintiff's counsels' requested fees: "I am aware of the hourly rates requested by Plaintiff's counsel in their fee motion. In my

opinion, the hourly rates requested by Plaintiff's counsel are reasonable and comparable to the market rates awarded in prisoner cases that I have litigated in federal court." (Huang Decl. ¶ 15.)

Sanjay S. Schmidt prepared a declaration in support of plaintiff's request for attorneys' fees. He states that, "a multiplier enhancement is very appropriate in this case." (Declaration of Sanjay S. Schmidt in Support of Plaintiff Vincent Bell's Motion for Attorneys' Fees, ¶14.) Mr. Stormer agreed that a multiplier of 2.0 was reasonable in this case, based simply on the contingent nature of the case. (Stormer Decl. ¶¶ 29-30.)

The lodestar requested by plaintiff's counsel is reasonable.

### E. Application of the *Kerr* Factors Justifies the Full Amount of Attorneys' Fees Requested.

In *Kerr v. Screen Guild Extras, Inc.,* 526 F.2d 67 (9th Cir. 1975), the Ninth Circuit established factors for the court to consider when awarding attorneys' fees: (1) the time and labor required; (2) the novelty and the difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; (12) awards in similar cases. 526 F.2d at 69-70. "The district court also has discretion to adjust the lodestar upward or downward using a multiplier that reflects 'a host of reasonableness factors, including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Stetson v. Grissom*, 821 F.3d 1157, 1166–67 (9th Cir. 2016) (*quoting In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941–42 (9th Cir.2011) (internal quotations omitted)).

### 1. The Time and Labor Required Supports this Fee Award.

The best judges of the amount of work necessary to win a civil rights case are the lawyers who won it. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Id.* Civil rights and ADA work is risky, the outcome uncertain, and the necessity of waiting several years for a financial return is almost always required. This is

1  especially true when litigating prisoner claims against their jailors. The Ninth Circuit recognized

2  that no reasonable civil rights lawyer is going to spend more time on such a case than is necessary:

3              It must also be kept in mind that lawyers are not likely to spend
             unnecessary time on contingency fee cases in the hope of inflating
4            their fees. The payoff is too uncertain, as to both the result and the
             amount of the fee. It would be the highly atypical civil rights case
5            where plaintiff's lawyer engages in churning. By and large, the court
             should defer to the winning lawyer's professional judgment as to
6            how much time he was required to spend on the case; after all, he
             won, and might not have, had he been more of a slacker.
7

8  *Id.* This is certainly true of the litigation here. Attorneys Siegel, Johns, and Kim are highly

9  experienced civil rights attorneys. They cannot afford to spend more time on these cases than is

10  reasonably necessary because of the very high risk they will never be paid. Mr. Bell is a prisoner

11  with no ability to pay his legal bills. The last thing these lawyers had in mind was "churning" the

12  case to build up extra fees because the risk of loss was too high. They engaged in six settlement

13  conferences prior to trial in an effort to resolve the matter prior to trial and requested

14  modifications in the court's schedule to preserve resources in anticipation of settlement (ECF No.

15  92.) Defendants' failure to make a single offer in this case forced the parties to trial and

16  necessitated the reasonable hours spent preparing the case for trial. (Johns Decl. ¶ 16.)

17          **2.    The Novelty and the Difficulty of the Questions Involved Supports
                  this Fee Award.**
18
           The difficulty in obtaining Mr. Bell's monetary and equitable relief was exacerbated by the
19
   defendants' refusal to meaningfully engage in settlement discussions. (Johns Decl. ¶ 16.) Mr. Bell
20
   had no choice but to bring his case to trial. While there is abundant caselaw for prisoner section
21
   1983 cases, there are few published ADA Title II reasonable accommodation cases. The law in this
22
   area is evolving and difficult. There are no pattern jury instructions for ADA Title II claims to
23
   guide the analysis. (ECF No. 159 at 68-69.) Plaintiff's counsel had to invent jury instructions for
24
   this claim. (ECF No. 159 at 68-69.) The issue was further complicated by the PLRA, its grievance
25
   and damages provisions, which do apply in the prison ADA context, while its fee cap does not.
26
   Sorting out these intricacies took all the experience and skill Mr. Bell's counsel brought to bear.
27
   ///
28

1

2          **3.      The Undesirability of the Case Supports this Fee Award.**

3          Prisoner litigation is often undesirable, and due to the limitations of the PLRA, meritorious

4   claims are often declined by experienced civil rights counsel. *Heilman v. Cherniss*, No.

5   211CV0042JAMEFBP, 2019 WL 265108, at *4 (E.D. Cal. Jan. 18, 2019) ("[T[he realities of

6   prisoner litigation make this category of cases undesirable to most attorneys."). *See also Woods*,

7   722 F.3d at 1182 n. 5 (noting that "out of the 55,376 prisoner suits that ended in 2000, only 10.5%

8   went to trial, and of those, a total of 77 resulted in victories for the prisoner. . . . That is a success

9   rate of 0.1% of the total number of suits filed a victory rate of 13% for those prisoner suits ending

10  in trial.").

11         Mr. Bell had difficulty finding counsel in this case. He requested assistance from his court-

12  appointed attorneys in *Bell v. Lee, et al.*, Case No. 3:13-cv-05820-SI, but they declined to

13  represent him. The Court did not appoint him counsel in this case, despite having similar facts to

14  his earlier case.

15         Congress and the courts have long recognized that creating broad compliance with our civil

16  rights laws, a policy of the "highest priority," requires that private individuals bring their civil

17  rights grievances to court. *See Newman v. Piggie Park Enterprises,* Inc., 390 U.S. 400, 402

18  (1968). Even when unsuccessful, such suits provide an important outlet for resolving grievances in

19  an orderly manner and achieving nonviolent resolutions of highly controversial, and often

20  inflammatory, disputes. Guaranteeing individuals an opportunity to be heard in court instead of

21  leaving them only with self-help as the means of remedying perceived injustices creates respect for

22  law and ameliorates the injury that individuals feel when they believe they have been wronged

23  because society views them as inferior. Our system of awarding attorney's fees in civil rights cases

24  is in large part dedicated "to encouraging individuals injured by . . . discrimination to seek judicial

25  relief." *Harris v. Maricopa County Superior Court*, 631 F.3d 963, 971 (9th Cir. 2011).

26         **4.      The Amount of Time Involved and the Results Obtained Supports
             this Fee Award.**

27         Mr. Bell achieved outstanding results—a jury award of $504,000 and equitable relief

28  requiring policy changes and retraining of all deputies in the City and County of San Francisco.

(ECF No. 267.) The amount of damages recovered only serves to bolster his attorneys' entitlement for full and fair compensation for their labor. This is especially true in cases seeking equitable relief because the primary purpose of a lawsuit to enforce ADA Title II and ADA retaliation provisions is to obtain injunctive relief. While attorney fees are available for obtaining plaintiffs damages, there is no requirement of any "relationship" between the amount of damages and the attorney fees necessarily expended to obtain the injunctive relief. *See Barrios v. California Interscholastic Fed'n*, 277 F.3d 1128, 1135 (9th Cir. 2002) (rejecting the defendants' argument that a recovery of $10,000 in damages was too low to justify an award of full attorneys' fees). Where fees are limited by the amount of damages, no matter how meritorious the claims, attorneys simply refuse to take the case.

### 5.     The Customary Fee Supports this Fee Award.

Under the lodestar method, the district court "multiples the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Gonzalez v. City of Maywood,* 729 F.3d 1196, 1202 (9th Cir. 2013). "'Reasonable rates' under § 1988 are to be calculated according to the prevailing market rates in the relevant legal community." *Blum v. Stenson*, 465 U.S. 886, 895 & n.11 (1984). "Generally, the relevant community is the forum in which the district court sits." *Barjon v. Dalton*, 132 F. 3d 496, 500 (9th Cir. 1997). *See also Carson v. Billings Police Depart.*, 470 F.3d 889, 891 (9th Cir. 2005). Case law in the Ninth Circuit has further clarified that "such rates should be established with reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity." *Common Cause v. Jones,* 235 F. Supp. 2d 1076, 1081 (C.D. Cal. 2002).

Here, the relevant legal community is San Francisco, California where the court hearing this matter sits. Counsels' supporting declarations demonstrate that the rates requested are prevailing in the San Francisco Bay Area. (*See* III.D. *supra*.)

### 6.     The Contingency of this Case Supports this Fee Award.

This case was accepted on a contingent fee basis. "Lawyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are

assured of compensation regardless of result." *Jones,* 636 F.2d at 1381. The court in *Yates v.*

*Mobile County Personnel Bd.,* 719 F.2d 1530 (11th Cir. 1983) held:

> Vindication of the policy of the law depends to a significant degree on the willingness of highly skilled attorneys...to accept employment in discrimination cases on a wholly contingent basis. They will hardly be willing to do so if their potential compensation is limited to the noncontingent employment. Busy and successful attorneys simply could not afford to accept contingent employment if those were the rules that were applied. The enforcement of our civil rights acts would then be entrusted largely to less capable and less successful lawyers who lack sufficient employment. Such an arrangement would ill serve policies of enormous national importance.

719 F.2d at 1534.

The court in *Chalmers v. City of Los Angeles,* 676 F. Supp. 1515 (C.D. Cal. 1987), discussed

in detail the relevance of a fixed versus a contingent fee:

> [T]he lodestar figure alone does not differentiate between the case taken on a full retainer and a case in which an attorney spends many hours over a period of months or years with no assurance of any pay if the suit is unsuccessful. Even if the client ultimately prevails, the burden of supporting salaried employees and fixed costs during the course of the contingent litigation can be substantial . . . To deny all considerations of the added burden and additional risks an attorney under a contingent fee agreement may have to bear does not strike us as "reasonable."

676 F. Supp. at 1530.

As this Court well knows, nothing could be riskier than handling prisoner civil rights

matters. Lawyers like Mr. Siegel, Ms. Johns, and Mr. Kim, who accept such cases, must carefully

evaluate potential clients, the validity of their claims, the likelihood of success, and be prepared to

work several years with no compensation until the case is resolved. Yet they too have bills to pay.

### F.    The Court Should Apply a Multiplier to this Case.

A 2.0 multiplier enhancement of the lodestar is warranted here. *See Guam Soc'y of*

*Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 697 (9th Cir. 1996) (upholding a 2.0

multiplier where the district court found that the case was extremely undesirability, that there was

little likelihood that another attorney would take the case, and case was of a rare and exceptional

nature). *See also Kelly v. Wengler*, 822 F.3d 1085, 1093-94, 1102-05 (9th Cir. 2016) (PLRA case,

affirming district court's multipliers of 2.0 and 1.3 because "prisoners in Idaho have such difficulty obtaining counsel for civil rights cases seeking declaratory and injunctive relief that Plaintiffs' counsel were likely the only attorneys willing to accept Plaintiffs' case."). An enhancement, or multiplier, is appropriate "where necessary to achieve the objective of 42 U.S.C. § 1988 to ensure civil rights litigants can attract competent counsel, and is awarded when counsel's performance was and the results achieved are excellent." *Hum. Rts. Def. Ctr. v. Cnty. of Napa*, No. 20-CV-01296-JCS, 2021 WL 1176640, at *4 (N.D. Cal. Mar. 28, 2021) (citing *Perdue v. Kenny A. ex. Rel. Winn*, 559 U.S. 542, 554 (2010)). "Any lodestar enhancement must be demonstrated by the fee applicant, and must be based on 'specific evidence' supporting that award." *Mitchell*, 2018 WL 3218364, at *14. *See also Quevedo v. New Albertsons, Inc*, No. SACV131160JLSJPRX, 2015 WL 10939716, at *6 (C.D. Cal. May 27, 2015) ("A multiplier may be based on a single relevant factor" – risk); *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1124 (C.D. Cal. 2008) ("purpose of a fee enhancement or so-called multiplier for contingent risk is to bring the financial incentives for attorneys enforcing important constitutional rights ... into line with incentives they have to undertake claims for which they are paid on a fee-for-services basis.").

> Generally, [a] contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case ...) is much higher than that of conventional loans. Indeed, even where a statute provides for attorneys' fees, there is, nevertheless, a great element of contingency in any fee system that rewards only attorneys for prevailing parties. Thus, an enhanced fee award is necessary to compensate attorneys for taking such risks . . . .

*Withrow v. Stryker Sales Corp.*, No. CV 16-544 DSF (PLAX), 2018 WL 5858609, at *5 (C.D. Cal. Mar. 27, 2018) (internal quotations and citations omitted).

Mr. Bell seeks a multiplier of 2.0 for four reasons. First, "[t]he lack of capable counsel willing to undertake representation of prisoners such as [him] in actions such as this one typically supports a fee enhancement." *Mitchell*, 2018 WL 3218364, at *16. "The Supreme Court has found that one of the rules governing fee-shifting statutes is that "a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Id.* (citing *Perdue*, 559 U.S. at 552.). Mr. Bell filed this action *pro se*. He requested Keker,

Van Nest & Peters, his court-appointed attorneys in *Bell v. Lee, et al.*, Case No. 3:13-cv-05820-SI, to represent him in this action as the claims were similar. The extremely capable attorneys at Keker, Van Nest declined, and the Court was not willing to appoint Mr. Bell representation in this case. This comes as no surprise given the inherent risks associate with this case. Mr. Bell is a Black man and was incarcerated for close to ten years for charges including murder. He was challenging a sergeant of using excessive force against him. Where cases present inherent risks, such as this one, the Ninth Circuit has held that a district court must apply a risk multiplier. *See Stetson,* 821 F.3d at 1166. Indeed, "[f]ailure to apply a risk multiplier in cases that meet these criteria is an abuse of discretion." *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016). Mr. Bell pursued this lawsuit on his own until he found Mr. Kim.

It is likely that without retaining Mr. Kim and Ms. Johns, Mr. Bell would have been unsuccessful. "Success in civil rights actions filed by prisoners is rare." *Mitchell*, 2018 WL 3218364, at *16. "[O]ut of the 55,376 prisoner suits that ended in 2000, only 10.5% went to trial, and of those, a total of 77 resulted in victories for the prisoner." *Woods*, 722 F.3d at 1183 n.5 (reference omitted). "That is a success rate of 0.1% of the total number of suits filed and a victory rate of 13% for those prisoner suits ending in trial." *Id.* Without a multiplier, attorneys like Mr. Kim and Ms. Johns would not be incentivized to represent community members who are most vulnerable like Mr. Bell, who may present as unsympathetic despite having meritorious claims. *See Oberfelder v. City of Petaluma*, No. C-98-1470 MHP, 2002 WL 472308, at *11 (N.D. Cal. Jan. 29, 2002) ("To many in the legal profession, plaintiff's unfortunate circumstances overshadow his complaint of constitutional rights violations."). In *Oberfelder*, the district court granted plaintiff's request of a 1.5 multiplier where counsel represented an unsympathetic plaintiff who pled guilty to drug charges, was incarcerated throughout the proceedings, had a relatively small amount in medical costs as a result of his injuries, and had to challenge the actions and judgment of a law enforcement official. *Id.* The court recognized, "[e]ven with the fee-shifting provisions of section 1988, had it not been for plaintiff counsel's dedication and fortitude, more likely than not, Oberfelder would have gone unrepresented." *Id. See also Kelly*, 822 F.3d at 1093-94, 1102-05 (awarding 2.0 and 1.3 multipliers because "prisoners in Idaho have such difficulty obtaining

counsel for civil rights cases seeking declaratory and injunctive relief that Plaintiffs' counsel were likely only attorneys willing to accept Plaintiffs' case.") The same is true of Mr. Kim and Ms. Johns.

Second, Mr. Kim's and Ms. Johns' excellent result on behalf of Mr. Bell supports an enhancement. "[I]n 'rare circumstances,' a court may enhance the lodestar based on counsel's exceptional success." *Edmo v. Idaho Dep't of Correction*, No. 1:17-CV-00151-BLW, 2022 WL 16860011, at *10 (D. Idaho Sept. 30, 2022) (citing *Perdue*, 559 U.S. at 554-55). Defendants did not put anything on the table in an effort to settle this case despite this Court mandating the parties attend several settlement conferences, and in defiance of the Northern District of California's requirement that parties attend settlement conferences in good faith. *See* The Northern District of California's Guidelines for Professional Conduct No. 13(d) ("A lawyer involved in an alternative dispute resolution process should participate in good faith, and should not use the process for purposes of delay or other improper purposes."). With no counter, Mr. Bell was forced to go to trial, knowing that if he did not prevail, his counsel "would have received nothing for their time or resources invested." *Asberry v. City of Sacramento/Sanitation Dep't*, No. S-01-2343 LKK/PAN, 2004 WL 3636054, at *6 (E.D. Cal. Apr. 5, 2004) (approving a 1.5 multiplier where defendant "adamantly" refused to settle and plaintiff's counsel "would have received nothing for her time or resources invested" had the plaintiff not prevailed at trial). Not only did Mr. Bell prevail, the jury awarded him half-a-million dollars! This is precisely the kind of rare circumstance where the work of Mr. Kim and Ms. Johns should be rewarded with a multiplier.

Third, a multiplier may be awarded where counsel suffered reputational harm. *See Mitchell*, 2018 WL 3218364, at *17 (acknowledging that suffering reputational injury as a result of representing a particular client can justify the application of a multiplier). After making his appearance in this case, Rebecca Bers, defense counsel in this action before Ed Wang was substituted in, called Mr. Kim to insult, bully, and intimidate him in violation of the Northern District of California's Guidelines for Professional Conduct No. 8, which states that, "[a] lawyer should at all times be civil, courteous, and accurate in communicating with opponents or adversaries, whether in writing or orally." (Kim Decl., ¶ 11.) Ms. Bers told Mr. Kim that Mr. Bell was a "psychopathic liar," and that he must not have had much going on in his life to decide to

represent him. (*Id.*) Later, Meredith Osborn, San Francisco's Chief Trial Deputy, also attempted to intimidate and bully Mr. Kim. (*Id.* at ¶ 12.) On a call related to a different matter, *Brewster v. City and County of San Francisco, et al.*, Case No. 4:20-cv-03254-HSG, Ms. Osborn told Mr. Kim that he was building a bad reputation for himself in the San Francisco City Attorney's Office and began lecturing him on ethics and professionalism. (*Id.* at ¶¶ 12-13.) In the same call, Ms. Osborn specifically identified Mr. Bell's case as a frivolous case that Mr. Kim had brought against the city, and informed him that her office would not settle any cases with him, (*Id.*), which may explain why defendants participated at every settlement conference in this matter without settlement authority. The behavior of San Francisco's two senior attorneys was highly inappropriate, unprofessional, and an attempt to bully and intimidate a younger civil rights attorney for representing Mr. Bell and other prisoners like him.

Finally, a multiplier must not be denied solely because it will "fall on the shoulders of California taxpayers." *Rodriguez v. Cnty. of Los Angeles*, 96 F. Supp. 3d 1012, 1026 (C.D. Cal. 2014), *aff'd,* 891 F.3d 776 (9th Cir. 2018) (internal quotations and citations omitted). "Refusing a multiplier in a civil rights case based only on the source of the fee would 'effectively immunize large or politically powerful defendants' engaging in conduct that harms the public." *Id.* (awarding a 2.0 multiplier because of the financial risk plaintiff's counsel assumed in litigating the case based on a contingency, the difficulty of the case, and counsel's demonstrated skill). Indeed, despite members of our community unanimously finding that Williams violated Mr. Bell's constitutional rights, the San Francisco City Attorney's Office was quoted saying, in regards to the verdict, that "[w]e ... remain adamant that the Sheriff's deputies acted reasonably and appropriately when placing and transporting the plaintiff to a safety cell." (Kim Decl., ¶ 17.)

Without this Court's permanent injunction, CCSF's statement demonstrates that but-for the court's order to modify its policies and train its deputies on the changes, the verdict would not have deterred it from continuing the same constitutionally violative conduct against prisoners with disabilities. In fact, Williams and no other defendant was terminated or reprimanded despite costing California taxpayers thousands of dollars in litigating this suit and losing over conduct that was avoidable, unnecessary, and excessive. Her wrong actions were vigorously defended by the

City Attorney's Office, including needlessly driving up attorneys' fees with meritless motions at the expense of the taxpayers. Even at trial, Ms. Rosenblit wrongly claimed Mr. Bell was concealing a weapon in his wheelchair without any evidence and in contradiction to the San Francisco Sheriff's deputies who screened his wheelchair. The City and County of San Francisco will not learn from the verdict, and the actions of the Sheriff's Office to the City Attorney's Office demonstrate this unfortunate truth. Thus, awarding a multiplier in this case serves to hold the politically and financially powerful defendants accountable. Hopefully, it will also force them to do better in the future.

### G.    Mr. Bell's Necessary Costs Are Also Compensable.

Mr. Bell is entitled to recover reasonable out-of-pocket expenses. "Under § 1988, a prevailing party may recover reasonable out-of-pocket litigation expenses that 'would normally be charged to a fee paying client.'" *Edmo*, 2022 WL 1686001, at *13 (*quoting Chalmers*, 796 F.2d at 1216 n.7. "These include, for example, costs for travel, lodging, computer-assisted research, long-distance phone calls, postage, and photocopying." *Id.* Expert fees are also recoverable. *Johnson v. Ballew*, No. 2:14-CV-01672-JAM-DB, 2020 WL 1923173, at *3 (E.D. Cal. Apr. 21, 2020) ("The ADA authorizes an award of litigation expenses and costs to a prevailing party, including expert witness fees." (citing *Lovell v. Chandler*, 303 F.3d 1039, 1058 (9th Cir. 2002)).

Mr. Bell filed his unopposed Bill of Costs on November 1, 2022. (ECF No. 270.) He filed an unopposed updated Bill of Costs the next day. (ECF No. 273.) It appears that Mr. Bell inadvertently calculated his total witness costs as $502.21 despite including $40 in attendance costs and $666 in subsistence costs. (*Id.*) Accordingly, Mr. Bell seeks to recover those costs not included in the total witness costs here.

In sum, Mr. Bell seeks $26,535.93 in costs, excluding what is recorded in his Bill of Costs. This cost includes Mr. Kim's travel time, FasTrak costs, Mr. Steger's BART fares, parking costs, and Mr. Sinclair's expert fees:

Mr. Kim's Total Travel time: 15.9 hours

              1/15/20 – 1.1 (travel to CJ2 and back from Belmont);

              1/21/20 – 1.1 (travel to CJ2 and back from Belmont);

2/4/20 – 1.1 (travel to CJ2 and back from Belmont);

4/7/21 – 1.2 (travel to CJ3 and back from Oakland);

7/19/21 – .7 (travel to CJ2 and back from Oakland);

3/16/22 - .7 (travel to Court and back from Oakland);

3/18/22 – 1.2 (travel to CJ3 and back from Oakland);

3/21/22 – 1.1 (travel to Court and back from Belmont);

3/22/22 – 1.1 (travel to Court and back from Belmont);

3/23/22 – 1.1 (travel to Court and back from Belmont);

3/24/22 – 1.1 (travel to Court and back from Belmont);

3/25/22 – 1.1 (travel to Court and back from Belmont);

3/28/22 – 1.1 (travel to Court and back from Belmont);

3/29/22 – 1.1 (travel to Court and back from Belmont); and

3/30/22 – 1.1 (travel to Court and back from Belmont).

(Kim Decl. ¶ 19.)

Travel time is recoverable at the full hourly rate in this district. *See Notter v. City of Pleasant Hill*, No. 16-CV-04412-JSC, 2017 WL 5972698, at *4 (N.D. Cal. Nov. 30, 2017) ("[T]his district has long granted prevailing parties their full hourly rate for travel time." (citing *Cotton v. City of Eureka, Cal.*, 899 F. Supp. 2d 1154, 1177 (N.D. Cal. 2012), and *Santiago v. Equable Ascent Fin.*, No. 11-3158-CRB, 2013 WL 3498079, at *5 (N.D. Cal. July 12, 2013) ("A lawyer's travel time is recoverable at a professional hourly rate because time spent traveling is time the attorney could not spend performing legal services for clients.")).

Mr. Kim's FasTrak costs: $ 28

4/7/21 – $7 (travel to CJ3 and back from Oakland);

7/19/21 – $7 (travel to CJ2 and back from Oakland);

3/16/22 - $7 (travel to Court and back from Oakland); and

3/18/22 – $7 (travel to CJ3 and back from Oakland)

(Kim Decl. ¶ 20.)

1  Mr. Kim's Parking costs: $180 – (parking on 3/16; 3/21; 3/22; 3/23; 3/24; 3/25, 3/28,

2 3/29, 3/30) at $20. (Kim Decl. ¶ 21.)

3  Mr. Steger's total BART fare expenses: $43.20 (Ex. B, Steger Decl.¶ 10.)

4  Mr. Sinclair's expert fees (excluding the $502.21 requested in Mr. Bell's Bill of Costs):

5 $18,891.23. (Kim Decl. ¶ 22.)

6  **H.**  **The Prison Litigation Reform Act Does Not Limit Fees in this Matter.**

7  As this Court is well aware, the Prison Litigation Reform Act ("PLRA") provides that in

8 prison actions in which attorneys' fees are authorized under § 1988, a cap of 150% typically

9 applies. 42 U.S.C § 1997e(d). In addition, the PLRA limits the hourly rate awarded for attorneys'

10 fees are authorized under § 1988. 42 U.S.C.A. § 1997e (d)(3).

11  **1.**  **PLRA Does Not Limit the Hourly Rate Where Plaintiff Wins on ADA and RA Claims.**

12  The Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA") have their

13 own attorneys' fees provisions, which do not rely on section 1988. *Armstrong v. Davis*, 318 F.3d

14 965, 974 (9th Cir. 2003) (citing 42 U.S.C. § 12205 (ADA fees provision); 29 U.S.C. § 794 (RA fees

15 provision)). Because the PLRA's limitation is restricted to fees awards pursuant to section 1988,

16 the limitation do not apply to cases where fees are awarded under the ADA or RA fees provisions.

17 *Id.* ("The PLRA cap on attorney's fees does not apply to fees awarded under the ADA or the RA.").

18 *See also Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 808 (9th Cir. 2018) ("[T]he PLRA

19 attorney's fees cap does not apply even to federal law claims for which attorney's fees are available

20 under 42 U.S.C. § 1988, as long as those claims are brought under statutes with their own

21 attorney's fee provisions."). In *Armstrong*, the court further found that the district court did not

22 abuse its discretion when awarding plaintiff's lawyers their full fee on "the tertiary § 1983 claim" as

23 the arguments, discovery and witnesses supporting it so overlapped with the ADA and RA claims

24 as to make discrete time allocation and billing challenging. 318 F.3d at 975.

25  Mr. Bell's section 1983 claims of excessive force and *Monell* liability were tertiary claims in

26 that they required no additional discovery and witnesses at trial beyond what was necessary to

27 prove his ADA and RA claims. There would be no way to make discrete allocation and billing

28 entries for the excessive force and *Monell* claims. Given their success on the ADA Title II and ADA

retaliation claims as well as the substantial overlap of the ADA Title II and § 1983 claims, plaintiff's attorneys have an independent justification for seeking their full fee unencumbered by the PLRA.

**2.      PLRA Fee Caps Do Not Apply to Cases with Equitable Relief.**

The limitations of the PLRA do not apply in cases where both monetary relief and equitable relief has been achieved, absent a showing that a specific portion of the attorneys' fees was incurred solely for the purpose of obtaining monetary relief. *Dannenberg v. Valadez,* 338 F.3d 1070, 1075 (9th Cir. 2003). Here, Mr. Bell obtained substantial non-monetary relief, compelling CCSF to modify its policies and training to address reasonable accommodations in SORT cell extractions and safety cell placements. (ECF No. 267.)

**IV.    CONCLUSION**

For the foregoing reasons, the Court should grant plaintiff's motion attorney's fees and costs.


Dated: November 26, 2022              SIEGEL, YEE, BRUNNER & MEHTA


By:  */s/ EmilyRose Johns*

EmilyRose Johns

*Attorneys for Plaintiff*