UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT KEITH BELL,<br><br>    Plaintiff,<br><br>  v.<br><br>SERGEANT YVETTE WILLIAMS, *et al.*,<br><br>    Defendants. | Case No. 18-cv-01245-SI<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Re: Dkt. No. 280 |

This order resolves plaintiff Vincent Keith Bell's motion for attorneys' fees and costs. For the reasons set forth in this order, plaintiff's motion is GRANTED IN PART. The Court awards $518,725.08 in fees and $45,427.16 in costs.

**BACKGROUND**

In February 2018, Bell filed this civil rights lawsuit asserting claims arising from a forcible cell extraction and placement in a safety cell while detained at San Francisco County Jail.[1] Bell's right leg is amputated above the knee. Under Sergeant Yvette Williams' direction, deputies in a "S.O.R.T." team forcibly removed Bell from his cell without the use of his wheelchair or prosthetic device, and Bell was forced to hop on his left leg until he collapsed, at which point deputies carried him by his arms and legs to the safety cell. Bell claimed that the manner in which he was extracted from his cell constituted excessive force and disability discrimination, that the extraction and safety cell placements were punitive and done in retaliation for filing grievances, that the City had a pattern of misusing safety cells for punishment, and that the City failed to train deputies on how to accommodate disabled inmates when performing cell extractions and transporting inmates to safety cells.

---

[1] Bell originally represented himself. In January 2020, attorney Andrew Chan Kim entered an appearance on his behalf. In March 2020, Mr. Kim joined the firm of Siegel, Yee, Brunner & Mehta, and that firm took on this case.

The fifth amended complaint, filed December 2020, asserted six causes of action: (1) 42 U.S.C. § 1983, Fourteenth Amendment Excessive Force challenging the S.O.R.T. team's forcible extraction of Bell from his cell, against Sergeant Williams and the S.O.R.T. team; (2) 42 U.S.C. § 1983, Fourteenth Amendment Violation of Due Process challenging the placement in the safety cell as punishment, against Captain Fisher, Sergeant Williams, and the S.O.R.T. team members; (3) 42 U.S.C. § 1983, municipal liability against defendant City and County of San Francisco ("City") pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); (4) Violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, against the City; (5) Violation of Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701, against the City; and (6) 42 U.S.C. § 1983, First Amendment Retaliation, against Captain Fisher, Sergeant Williams, and Deputy Leung.

In an order filed November 21, 2021, the Court denied the parties' cross-motions for summary judgment on the ADA and Rehabilitation Act claims. As to the § 1983 claims, the Court granted summary judgment in favor of the S.O.R.T. team members on the excessive force and due process claims; granted summary judgment in favor of the City to the extent the *Monell* claim was predicated on a pattern or practice of misusing safety cells for punishment or that Fisher and Williams were final policymakers regarding use of the S.O.R.T. team; and granted summary judgment in favor of Fisher and Leung on the First Amendment retaliation claims. The Court denied summary judgment on the excessive force, due process, and retaliation claims against Williams, and denied summary judgment on the *Monell* claim asserting a failure to train deputized staff about cell extractions and safety cell placement of inmates with disabilities.

A jury trial was held from March 21-30, 2022. The jury found in favor of Bell and against the City on the ADA and the Rehabilitation Act claims and on his *Monell* claim for failure to train deputized staff on the proper use of the SORT and the safety cell for disabled inmates. The jury also found in favor of Bell on his claim of excessive force against Williams. The jury found against Bell on his claims that Williams violated his due process rights by placing him in the safety cell, or that Williams retaliated against Bell in violation of his First Amendment rights. As to damages, the jury found that Bell had proven that the City caused him physical and emotional

1  harm and awarded him $504,000 in compensatory damages but did not award punitive damages.

2  The jury found that Bell did not prove that Williams caused him physical or emotional harm and

3  did not award any damages against Williams.

4  On October 18, 2022, following a hearing on the parties' proposals for injunctive relief, the

5  Court issued a judgment in the case. Dkt. Nos. 266, 267. The judgment awarded Bell $504,000 in

6  compensatory damages from the City and the following injunctive relief:

> [A]n injunction requiring the City and County of San Francisco to modify its policies on safety cell placements and SORT cell extractions to require staff to consider reasonable accommodations, including during the planning phase of a SORT cell extraction, when transporting an inmate with known mobility issues. Staff are directed to specifically consider whether allowing the inmate to use a previously prescribed disability device would be consistent with ensuring staff and inmate safety, and if not, whether use of another reasonably available mobility assistance equipment or device would be reasonably feasible under the circumstances. Reasonable accommodations must be made for prisoners with disabilities, unless such accommodation would pose or create a risk of injury to any person, or a threat to the security or order of the facility. In a non-emergency situation, custody staff shall consult with medical staff prior to any determination about removing or denying a medically prescribed device when moving an inmate into a safety cell or performing a SORT cell extraction. Staff are required to document the reasons for denial of a prescribed mobility device or other means of conveyance when moving an inmate into a safety cell or performing a SORT cell extraction. Staff shall be trained on the modified policies within six months of the issuance of the modified policies; if such training does not occur within that time period, the City shall notify plaintiff's counsel and the Court.

Dkt. No. 267.

Bell's counsel pursued this case on a full contingency. Johns Decl. ¶ 10 (Dkt. No. 280-2); Kim Decl. ¶ 10 (Dkt. No. 280-3). Bell now seeks fees pursuant to the fee-shifting provisions of 42 U.S.C. §§ 1983 and 1988 and the ADA, 42 U.S.C. § 12205. *See Labotest, Inc. v. Bonta*, 297 F.3d 892, 894 (9th Cir. 2002) ("A § 1983 plaintiff who obtains a final judgment against a defendant is, of course, a prevailing party for attorney's fees purposes under § 1988."); *Barrios v. California Interscholastic Fed'n*, 277 F.3d 1128, 1134 (9th Cir. 2002) ("'The ADA, specifically 42 U.S.C. § 12205, permits the 'prevailing party' to seek attorneys' fees and costs.").

## LEGAL STANDARD

A district court begins its calculation of fees by multiplying the number of hours reasonably spent on the litigation by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424,

3

433, 436 (1983). The resulting number is frequently called the "lodestar" amount. *City of Riverside v. Rivera*, 477 U.S. 561, 568 (1986). In determining the appropriate number of hours to be included in a lodestar calculation, the district court should exclude hours "that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. The party seeking the award should provide documentary evidence to the court concerning the number of hours spent, and how it determined the hourly rate(s) requested. *Id.* at 433. Once the moving party meets its burden of documenting its hours and submitting evidence in support of hours worked, "[t]he party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates v. Gomez*, 60 F.3d 525, 534-35 (9th Cir. 1995), *as amended* (Aug. 3, 1995)

## DISCUSSION

As of the filing of the reply papers, Bell seeks a lodestar of attorneys' fees in the amount of $558,283[2] for his counsel's work on this matter, a multiplier of 2.0 for their exceptional results and undesirability of the case, $26,535.93 in non-expert costs and $18,891.23 in expert costs, for a total of $1,161,993.16. In support of the fee motion, Bell has submitted declarations from the lawyers and the paralegal who worked on the case describing their professional experience and their work on this case, and attached to each declaration are the attorney's or paralegal's time sheets. Bell has also submitted the declarations of four civil rights and public interest lawyers who attest to the reasonableness of the hourly rates sought by Bell's counsel and paralegal, as well as the request for a multiplier.

Defendants do not dispute that Bell is the prevailing party and that he is entitled to recover fees and costs. However, defendants raise numerous objections to the fee motion and contend that the Court should award no more than $77,411.80 in attorneys' fees and $9,445.62 in expert costs.

---

[2] This lodestar reflects a $1,461.50 reduction made in response to defendants' objections to particular time entries, and the addition of time spent preparing the reply papers. *See* Reply at 2 (Dkt. No. 285).

4

1   The Court addresses each of these objections.

2

3   **I.      "Excessive, Unnecessary and/or Vague" Entries**

4   Defendants contend that the Court should make an across-the-board 10% reduction to account for "excessive, unnecessary and/or vague" time entries. Opp'n at 1 (Dkt. No. 284). Defendants have identified a number of specific time entries with which they take issue, such as entries that they claim are unrelated to this lawsuit or are overly general because they state, for example, "Bell – meeting" or "Bell – call," rather than identifying the subject matter of the meeting or call. Defendants also argue that some entries are "block billed" and that some entries seek fees for non-compensable "clerical" tasks such as filing documents and scheduling depositions. Defendants also argue that generally all of the time entries are too vague for meaningful review such that it is appropriate to impose a 10% "haircut" reduction across the board.

In response to defendants' arguments, Bell's counsel have eliminated a few time entries and adjusted the billing rate to a $200 clerical rate for several other entries. Reply at 2. Counsel argue that the remaining time entries are sufficiently detailed and understood in their context, such as Mr. Kim's challenged 3/8/22 entry for "Bell – meeting" which correlates with Ms. Johns' unchallenged 3/8/22 entry for "team meeting"; both relate to preparing for the 3/10/22 final pretrial conference. Counsel also provide further detail for the challenged entries, for example explaining that several entries referred to preparation for a settlement conference or Mr. Kim's calls with Mr. Bell's criminal defense attorney. Counsel also argue that attorneys and paralegals may be compensated at reasonable rates for so-called "clerical" tasks such as revising filings and preparing trial binders, and that some of the identified "clerical" tasks involved substantive work, such as Mr. Kim's 9/24/01 and 10/2/21 entries for work on the summary judgment opposition and reply briefs. Finally, counsel argue that they did not "block bill" because they did not lump all time on a given day together. *See Welch v. Metro. Life Ins. Co*., 480 F.3d 942, 945 n.2 (9th Cir. 2007) ("Block billing is the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific

5

tasks.") (internal quotation and citation omitted). Instead, counsel argue that the challenged entries contain multiple compensable tasks, such as drafting or reviewing court submissions and filing the submissions, and that those entries are reasonable.

When reviewing defendants' objections, the Court keeps in mind that "lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). The Court does agree that the further deductions and reductions to a clerical rate made in the reply brief are appropriate, and the Court agrees with defendants that counsel should not recover for .7 hours of Mr. Kim's time and .5 hours of Ms. Johns' time on an advocacy letter regarding an inaccessible shower at the San Bruno jail because those matters are unrelated to this litigation.

However, the Court is not persuaded by defendants' remaining objections. The Court has reviewed plaintiffs' time entries and finds that the vast majority of entries for all timekeepers are sufficiently detailed for meaningful review. Those time entries that are less detailed – such as Mr. Kim's March 8-11, 2022 time entries – are "understood when viewed in the context of the surrounding entries," which all relate to the final pretrial conference. *Prison Legal News v. Schwarzenegger*, 561 F. Supp. 2d 1095, 1103 (N.D. Cal. 2008) (awarding fees for "non-descriptive" billing entries for email or conferencing that did not indicate the subject or other parties to the communication where surrounding entries provided context). The Court has reviewed the time entries challenged as either "non-compensable clerical tasks" or "block billed" entries containing compensable time and "non-compensable clerical" time. The Court disagrees with defendants' characterization of some of this time as "clerical," such as Ms. Johns' 3/2/22 entry for 1 hour for organizing trial binders and files, or the time spent by Mr. Kim on the summary judgment opposition and reply briefs and Ms. Johns on the motions in limine.[3] Further, to the extent that the challenged entries include time spent on filing documents on ECF, client

---

[3] Plaintiff's reply explains that although the entries state "filed opposition" for 4.8 hours; "filed reply" for 3.4 hours; and "clean up OMILs 2, 3, 4, and 6" for 1.2 hours, that time was spent substantively working on and revising those documents. Reply at 6.

communications, preparation of chambers copies, scheduling depositions, preparation of discovery, and similar tasks, the Court agrees with other Judges in this district who have concluded that such tasks are compensable at the relevant attorney or paralegal rate. *See, e.g. Californians for Disability Rights v. Cal. Dep't of Transp.*, No. C 06-05125 SBA (MEJ), 2010 WL 8746910, at *17 (Dec. 13, 2020) ("[T]asks such as filing documents on ECF, revising and preparing documents referred to in the time records as 'filings,' and organizing certain files in anticipation of preparing a motion are not clerical tasks. Additionally, many entries such as those billed for finalizing documents and reviewing emails regarding filings, editing and conferencing regarding exhibits, reviewing declarations, internal conferencing regarding expert reports, communicating with class members, teleconferencing with opposing counsel, scheduling witnesses, scheduling depositions (rather than simply entering them on the calendar), service of documents and notices by clerks, and technical activities regarding trial software are [not] clerical activities . . . .").[4]

Accordingly, the Court makes the following deductions and reductions to the lodestar: (1) a deduction of 1.5 hours from Ms. Johns' time (.5 hour for 6/26/20 advocacy letter and 1.0 hour for 3/22/22 press release) and reduction of 1.0 hour on 9/24/01 for "finalize formatting and tables for opposition to MSJ" to clerical rate of $200; (2) deduction of .7 from Mr. Kim's time (.1 hour for 2/21/20 "mailed courtesy copy of admin motion" and .6 for 6/26/20 advocacy letter); and (3) from Mr. Steger's time, a deduction of .8 for 7/21/21 "preparing Vincent Bell medical records for client's defense attorney and reduction of 1.3 hours to $200/hour clerical rate (.1 hour and 1.2 hours on 7/1/01 for downloading medical records and scanning documents).

## II. Prison Litigation Reform Act ("PLRA")

### A. Applicability of the PLRA and Apportionment

"The PLRA's provisions relating to attorney's fees apply to 'any action brought by a

---

[4] Defendants also argue that the Court should reduce the total hours by 50% to reflect Bell's partial success. The Court addresses those arguments in the context of the applicability of the PLRA.

7

prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under [42 U.S.C. § 1988].'" *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016). Section 1997e of the PLRA provides:

> (d) Attorney's fees
>
> (1) In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988 of this title, such fees shall not be awarded, except to the extent that--
>
>     (A) the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under section 19881 of this title; and
>
>     (B)(i) the amount of the fee is proportionately related to the court ordered relief for the violation; or
>
>     (ii) the fee was directly and reasonably incurred in enforcing the relief ordered for the violation.
>
> (2) Whenever a monetary judgment is awarded in an action described in paragraph (1), a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant. If the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant.
>
> (3) No award of attorney's fees in an action described in paragraph (1) shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18 for payment of court-appointed counsel.

42 U.S.C.A. § 1997e. The Ninth Circuit has explained,

> The PLRA alters the lodestar method in prisoner civil rights cases in three fundamental ways. First, rather than hours reasonably expended in the litigation, hours used to determine the fee award are limited to those that are (1) directly and reasonably incurred in proving an actual violation of the plaintiff's rights and (2) either proportionately related to court-ordered relief or directly and reasonably incurred in enforcing such relief. 42 U.S.C. § 1997e(d)(1). Second, in actions resulting in monetary judgments, the total amount of the attorney's fees award associated with the monetary judgment is limited to 150 percent of the judgment. Id. § 1997e(d)(2); *see Jimenez v. Franklin*, 680 F.3d 1096, 1100 (9th Cir. 2012). This limitation does not apply to actions (or parts of actions) resulting in non-monetary relief. Third, the hourly rate used as the basis for a fee award is limited to 150 percent of the hourly rate used for paying appointed counsel under the Criminal Justice Act, 18 U.S.C. § 3006A (the "CJA rate"). 42 U.S.C. § 1997e(d)(3).

*Kelly*, 822 F.3d at 1099-1100. "[W]hile the PLRA limits the hours and the hourly rate used in calculating the lodestar figure, it does not cap the total amount of attorney's fees awards in cases seeking declaratory and injunctive relief, and it continues to authorize a court to enhance the

8

1  lodestar figure based on non-subsumed factors." *Id.* at 1101.

2  Defendants argue that the Court should first reduce the total hours by 50% to reflect that Bell did not prevail on his § 1983 retaliation and due process claims. For the remaining hours, defendants argue that half of those hours should be apportioned to the successful § 1983 claims (and therefore subject to the PLRA hourly rate cap), and the other half of those hours should be apportioned to the successful ADA and Rehabilitation Act claims (which are not subject to the PLRA hourly rate cap). Bell argues that the Court should not make any reductions for the unsuccessful claims because those claims are related to the successful claims, and that the Court should not apply the PLRA to any of the hours because Bell prevailed on his ADA and Rehabilitation Act claims, citing *Armstrong v. Davis*, 318 F.3d 965, 973-74 (9th Cir. 2003).

The Court concludes that the PLRA does not apply to the time spent litigating Bell's successful ADA and Rehabilitation Act claims, and that the facts and theories underpinning those claims are essentially the same as those involved in Bell's successful § 1983 excessive force claim against Williams. Under *Armstrong*, the Court finds that the time spent litigating those claims is not subject to the PLRA. However, the Court agrees with defendants that that the PLRA applies to Bell's successful *Monell* claim, and that as to the unsuccessful § 1983 claims (retaliation, due process, and remainder of *Monell* claim), the PLRA prohibits payment of fees that are not "directly and reasonably incurred in proving an actual violation of the [prisoner's] rights." 42 U.S.C. §1997e(d); *see Siripongs v. Davis*, 282 F.3d 755, 758 (9th Cir. 2002) ("The plain meaning of an 'actual violation' of plaintiff's rights excludes a violation that has not been proven in fact, but merely has been asserted."). Thus, the time spent litigating the unsuccessful § 1983 claims must be eliminated from the fee award to the extent that time was not "directly and reasonably incurred in proving an actual violation" of Bell's rights.

The Court concludes that the total hours should be reduced by one-third to excise time spent on the unsuccessful § 1983 claims. The Court finds that one-third is a reasonable approximation of the time spent purely on the unsuccessful claims because the unsuccessful and successful claims involved a common core of facts and some related legal issues, as well as some distinct factual and legal issues. All of Bell's claims arose out of the events of January 14-18,

1    2018, starting with Deputy Leung issuing a Request for Discipline ("RFD") against Bell and
2    ending with Bell's cell extraction and placement in a safety cell. Bell alleged that Leung sexually
3    harassed him and then retaliated against him by issuing the RFD after he told Leung that he would
4    file a grievance against him; he alleged that Sergeant Williams retaliated against him when she
5    sustained the RFD and determined what disciplinary consequences would flow from that RFD;
6    and he alleged that Captain Fisher retaliated against him by approving Williams' decisions about
7    those disciplinary consequences. The disciplinary consequences Williams imposed included
8    making Bell move to a different cell, which directly led to the forcible cell extraction and Bell's
9    placement in the safety cell. Bell alleged that Williams violated his due process rights by placing
10   him in the safety cell for punitive reasons, and that the City had a pattern and practice of misusing
11   the safety cells. Bell's successful excessive force, *Monell*, ADA and Rehabilitation Act claims
12   arose from the same common core of facts about the manner in which he was forcibly extracted
13   from his cell and placed in the safety cell, and proving those claims necessarily required
14   exploration and development of many of the same facts underpinning the retaliation and due
15   process claims. However, the unsuccessful § 1983 claims involved some separate legal issues,
16   such as whether Bell had exhausted his retaliation claim against Leung, whether there was
17   evidence of a pattern and practice of misusing the safety cells for punishment, and the proper
18   formulation of jury instructions on the due process claim.

19   Accordingly, the Court makes the following reductions to the total hours claimed: (1)
20   deduction of 5.66 hours from Mr. Siegel (17.0 total – 1/3 (5.66) = 11.34 hours); (2) deduction of
21   122.23 hours from Ms. Johns (366.7[5] total – 1/3 (122.23) = 244.47); (3) deduction of 160.66 from
22   Mr. Kim (480.2 total – 1/3 (160.66) = 319.54); and (4) deduction of 94.23 from Mr. Steger (282.7
23   total – 1/3 (94.23) = 188.47).

24   After these deductions to eliminate time spent on the unsuccessful § 1983 claims, the Court
25   finds it appropriate to apportion one-fourth of the remaining hours to the *Monell* claim and three-
26   fourths of the remaining hours to the ADA and Rehabilitation Act claims. *See Pierce v. County of*

---

[5] The totals for Ms. Johns, Mr. Kim and Mr. Steger reflect the deductions made *supra*. The 2.3 hours at a clerical rate are included separately *infra*.

1  *Orange*, 905 F. Supp. 2d 1017, 1034-35 (C.D. Cal. 2017).  The Court finds this division

2  reasonably approximates the time spent on these claims because the gravamen of Bell's claims

3  was that because he was disabled, the manner in which he was forcibly extracted from his cell

4  without the use of his wheelchair, prosthetic device, or gurney, constituted excessive force and

5  disability discrimination.  Even the successful *Monell* claim was intertwined with the ADA and

6  Rehabilitation Act claims because Bell proved that the City failed to adequately train its

7  employees on how to perform cell extractions on people with disabilities and the placement of

8  people with disabilities in safety cells.  In light of the intertwined nature of Bell's successful

9  § 1983 and ADA and Rehabilitation Act claims, a 25%/75% division is appropriate.  Accordingly,

10  the Court makes the following allocation of the remaining hours:

11  Mr. Siegel:  2.83 hours PLRA/*Monell* and 8.51 hours for ADA and Rehabilitation Act

12  Ms. Johns:  61.18 hours PLRA/*Monell* and 183.52 for ADA and Rehabilitation Act

13  Mr. Kim:  79.89 hours PLRA/*Monell* and 239.65 for ADA and Rehabilitation Act

14  Mr. Steger:   47.12 hours PLRA/*Monell* and 141.35 for ADA and Rehabilitation Act

15  Total:  191.02 hours PLRA/*Monell* and 573.03 for ADA and Rehabilitation Act

### B. Hourly Rate

Section 1997e(d)(3) caps attorney's fees authorized under 42 U.S.C. § 1988 at 150% of the rate established by the Criminal Justice Act, 18 U.S.C. § 3006A, for payment of court-appointed counsel.  The relevant rate under 18 U.S.C § 3006A is the rate that the Judicial Conference of the United States authorized and requested of Congress, not the rate that Congress ultimately allocated or was actually paid to CJA-appointed counsel.  *Parsons v. Ryan*, 949 F.3d 443, 465-66 (9th Cir. 2020) (district court did not err in deriving this rate from the judiciary's "Congressional Budget Summary").  The cap also applies to separately billed paralegal fees.  *See Perez v. Cate*, 632 F.3d 553, 556-57 (9th Cir. 2011) (affirming order for payment of paralegal fees at the requested hourly rate of $169.50, which was 150% of the CJA rate for attorneys and was below the market rate for paralegals in the locale).

The Ninth Circuit has "recognized that district courts have the discretion to compensate

11

1    prevailing parties for any delay in the receipt of fees by awarding fees at current rather than
2    historic rates in order to adjust for inflation and loss of the use funds." *Gates v. Deukmejian*, 987
3    F.2d 1392, 1406 (9th Cir. 1993). The Court finds it appropriate to award fees based on the 2023
4    PLRA rate ($158/hour) to compensate for the delay in payment. *See* Admin. Office of the U.S.
5    Courts, *Fiscal Year 2023 Congressional Budget Summary* (March 2022) at ii. Thus, the hourly
6    rate for the PLRA/*Monell* time is $237/hour, and the lodestar for the PLRA/*Monell* time is
7    $45,271.74.

### C.  Applying 25% of the Judgment

Defendants contend that under the PLRA, up to 25% of Bell's monetary damages must go toward satisfying the fees associated with Bell's successful constitutional claims. *See Murphy v. Smith*, __ U.S. __, 138 S. Ct. 784, 785 (2018). Because the Court finds that the PLRA applies to a portion of the fee award, the Court agrees that up to 25% of Bell's compensatory damages award must be used to pay the portion of the fee award that is attributable to the *Monell* claim.

## III.  Hourly Rates for ADA/Rehabilitation Act Claims

Bell seeks the following hourly rates: (1) $919/hour for Mr. Siegel, an attorney with 52 years of experience; (2) $675/hour for Ms. Johns, a 2013 law graduate; (3) $465/hour for Mr. Kim, a 2017 law graduate; and (4) $250/hour for Mr. Steger, a paralegal. In support of these hourly rates, Bell's counsel and paralegal have submitted their own declarations, the declarations of four attorneys who litigate in the field of prisoners' rights, and the Laffey Matrix, "[a] widely recognized compilation of attorney and paralegal rate data [], so named because of the case that generated the index." *Craiglist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 3d 1039, 1067 (N.D. Cal. 2010) (citing *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984)).

In opposition, defendants have submitted evidence of the billing rates of defense counsel and the defense paralegal[6] as well as the rates awarded to the plaintiff's counsel in *Johnson v. Li*, Case No. 5:19-cv-08075-EJD, 2020 WL 3268580 (N.D. Cal. June 17, 2020) (awarding $475/hour for a partner and $350/hour for associates in case alleging mobility access barriers at a public accommodation). Defendants also cite *Zuegel v. Mtn. View Police Dep't*, Case No. 17-cv-03249-BLF, 2021 WL 2808977, at * 7 (N.D. Cal. July 6, 2021), in which Judge Freeman awarded the requested rate of $675/hour to a 1982 law school graduate.

To determine whether counsel's hourly rates are reasonable, the Court assesses the "prevailing market rate in the relevant community." *Roberts v. City of Honolulu*, 938 F.3d 1020, 1024 (9th Cir. 2019) (internal citation and quotation marks omitted). "The fee applicant has the burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Jordan v. Multnomah Cty.*, 815 F.2d 1258, 1263 (9th Cir. 1987). Similarly, Civil Local Rule 54-5(b)(3) requires the party seeking a fee award to submit "[a] brief description of relevant qualifications and experience and a statement of the customary hourly charges of each such person or of comparable prevailing hourly rates or other indication of value of the services." The "party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the . . . facts asserted by the prevailing party in its submitted affidavits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978-79 (9th Cir. 2008).

The Court finds that Bell has met his burden to show that the requested hourly rates are in line with the prevailing rates in the community, and that defendants have not rebutted plaintiff's evidence. *Johnson v. Li* is wholly inapposite, as that case was a "relatively simple one" that did not involve complex issues, and Judge Davila noted that "[t]he sheer number of ADA cases that Johnson's counsel is litigating simultaneously underscores the straightforward nature of their

---

[6] Mr. Wang states that he has 11 years of experience and that his external billing rate for the City is $550/hour, that Ms. Rosenblit's rate is $600/hour, and that the paralegal's rate is $195/hour. Wang Decl. ¶ 7 (Dkt. No. 284-1); Opp'n at 21.

cases." *Johnson*, 2020 WL 3268580, at *3. In contrast, this case involved numerous complex legal and factual issues as well as the challenges of representing an incarcerated plaintiff. The practitioner declarations submitted by plaintiff are much more indicative of the prevailing rates in the field of complex civil rights and prisoner litigation.[7] *See Dowd v. City of Los Angeles*, 28 F. Supp. 3d 1019, 1051 (C.D. Cal. 2014) ("When determining a reasonable hourly rate, the 'relevant legal community' is generally the forum in which the district court sits, and 'the proper scope of comparison . . . extends to all attorneys in the relevant community engaged in 'equally complex Federal litigation,' no matter the subject.") (quoting *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454-55 (9th Cir. 2010)). The Court is also not persuaded that the rates of defense counsel require a reduction in plaintiff's counsel rates. *See Trevino v. Gates*, 99 F.3d 911, 925 (9th Cir. 1996) ("[T]he district court should not have relied on the rates paid by the City to private attorneys for defending excessive force cases as a starting point for the reasonable hourly rate. . . . Private attorneys hired by a government entity to defend excessive force cases are not in the same legal market as private plaintiff's attorneys who litigate civil rights cases."). The Laffey Matrix provides further support for the claimed hourly rates, showing 2022-2023 rates of $508/hour for attorneys with 4-7 years of experience (Mr. Kim), $733/hour for attorneys with 8-10 years of experience (Ms. Johns) and $997/hour for attorneys with 20+ years of experience (Mr. Siegel). *See* Siegel Decl., Ex. B (Dkt. No. 284); *see also Craiglist, Inc.*, 694 F. Supp. 3d at 1067 (noting that Laffey Matrix rates are "tailored for the District of Columbia" and that the San Francisco Bay area has a higher locality pay differential than D.C.).

Applying the hourly rates to the ADA/Rehabilitation Act hours, the Court arrives at the following lodestar:

Mr. Siegel: 8.51 hours x $919/hour = $7,820.69

Ms. Johns: 183.52 hours x $675/hour = $123,876.00

Mr. Kim: 239.65 hours x $465/hour = $111,437.25

---

[7] *Zuegel* is a prisoner civil rights case and thus much more relevant than *Johnson*. However, the Court notes that in that case, Judge Freeman awarded the requested rate, and cited authority from the Northern District that would have justified a higher rate.

1  Mr. Steger: 141.35 hours x $250/hour = $35,337.50

2  Total for ADA/Rehabilitation Act = $278,931.44[8]

3  Thus, the total lodestar is $324,203.18 ($45,271.74 PLRA lodestar + $278,931.44 ADA/Rehabilitation Act lodestar).

### IV.  Multiplier

After calculating the lodestar, the Court must decide whether to enhance or reduce that figure based on factors that are not already subsumed in the initial lodestar calculation. *See Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000) (ADA case); *Kelly*, 822 F.3d at 1100-02 (PLRA case). Such factors can include achieving "extraordinary results" and attracting competent counsel. *Id.* at 1103-04. A court cannot, however, rely upon the factors in *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983), to enhance or lower an award because the hourly rate already subsumes such factors. *Morales v. City of San Rafael*, 96 F.3d 359, 363 n.8 (9th Cir. 1996); *Parsons*, 949 F.3d at 467.

The Court finds that a 1.6 multiplier is appropriate in this case because of the extraordinary results achieved and the need to attract competent counsel to litigate meritorious prisoner rights cases, particularly when the case is not an attractive one to take. Not only did Bell receive a very large compensatory damages award, but even more importantly from the Court's perspective, Bell secured significant injunctive relief requiring the City to modify its policies, practices and training regarding cell extractions and safety cell transport of inmates with physical disabilities. *See Kelly*, 822 F.3d at 1103; *see also Morales*, 96 F.3d at 364 (remanding fee award for proper application of lodestar methodology, including consideration of multiplier, and instructing district court to consider "significant public policy interest" in the plaintiff's victory in wrongful arrest case). This case posed numerous challenges for counsel, including that Bell is a longtime pretrial detainee who is charged with murder, thus making this case undesirable to take on. *See Camacho*, 523 F.3d at 982 n.1 (noting "undesirability" of case as relevant lodestar adjustment factor); *Rodriguez*

---

[8] This includes the 2.3 hours calculated at a $200/hour clerical rate, discussed *supra*.

*v. County of Los Angeles*, 96 F. Supp. 3d 1012, 1025 (C.D. Cal. 2014) (awarding 2.0 multiplier based on risk, difficulty of case and counsel's skill and noting that pretrial detainee plaintiffs were "routinely described as the 'worst of the worst' prisoners"), *aff'd* 891 F.3d 776 (9th Cir. 2018). Under all of these circumstances, the Court finds that a 1.6 multiplier is appropriate and necessary in order to arrive at a reasonable and compensatory fee.

Accordingly, the Court applies at 1.6 multiplier to the $324,203.18 lodestar for a total fee award of $518,725.08.

## V.  Costs

Bell seeks $18,891.23 in expert fees for Mr. Sinclair, and a total of $26,535.93 in costs that were not included the Bill of Costs that was taxed by the Clerk. Counsel have submitted copies of Mr. Sinclair's invoices, Kim Decl. Ex. C (Dkt. No. 280-3), and sworn declarations attesting to the costs claimed.

Defendants argue that "[f]or the same reasons the Court should apportion 50% of Plaintiff's attorneys' fees to his constitutional claims (and 50% to Plaintiff's ADA/RA claim), the Court should also reduce the expert costs by half." Opp'n at 24. Defendants do not cite any authority for this proposition, and in any event the Court finds that the expert fees are fully recoverable under the ADA. *See Lovell v. Chandler*, 303 F.3d 1039, 1058 (9th Cir. 2002).

Defendants also object that the Court should not award the costs that were not included in the Bill of Costs, and that the costs are not documented by invoices. Non-taxable costs are recoverable under section 1988 and the ADA. *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994); *Lovell*, 303 F.3d at 1059. The Court finds that the sworn Kim and Steger declarations are sufficient proof as to the claimed costs. Accordingly, the Court GRANTS the request for $26,535.93 in costs.

///

///

# CONCLUSION

The Court awards a total of $518,725.08 in fees and $45,427.16 in costs, broken down as follows:

PLRA lodestar of $45,271.74 x 1.6 multiplier = $72,434.78; Bell must satisfy this portion of the fee award from the damages award.

ADA/Rehabilitation Act lodestar of $278,931.44 x 1.6 multiplier = $446,290.30

Costs:  $26,535.93 in non-taxable costs and $18,891.23 in expert costs.

**IT IS SO ORDERED**.

Dated: July 28, 2023

SUSAN ILLSTON
United States District Judge